## A93A2337. MORGAN v. THE STATE.
### (442 SE2d 257)

POPE, Chief Judge.

William Hand Morgan, Jr., was tried before a jury and found guilty of DUI in violation of OCGA § 40-6-391 (a) (4). He appeals from the judgment of conviction and sentence entered by the trial court on the jury's verdict.

1. The Georgia State Patrol issued Morgan a Uniform Traffic Citation (UTC), accusing him of DUI in violation of OCGA § 40-6-391. In response to a written motion to quash the accusation for being vague, the solicitor amended the citation to specify alternative violations of OCGA § 40-6-391 by including a reference to subsections (a) (1) and (a) (4). Morgan amended his motion, contending that the solicitor's specification of alternative violations in a single UTC made the accusation duplicitous. After a hearing, the amended motion to quash was overruled and this ruling is enumerated as error. Although the State argues that a motion to quash is not a proper procedural vehicle to raise the objection of duplicity, we treat the amended written motion to quash on this ground as a special demurrer. *Garcia v. State,* 207 Ga. App. 794 (429 SE2d 164) (1993); *Carter v. State,* 155 Ga. App. 49 (1) (270 SE2d 233) (1980).

Morgan argues that the solicitor's amendment to the UTC to specify violations under OCGA § 40-6-391 (a) (1) and (a) (4) amounts to an impermissible joining of two distinct offenses in a single count, relying on *Peters v. State,* 175 Ga. App. 463 (1) (333 SE2d 436) (1985). In *Peters,* this court held that OCGA § 40-6-391 (a) (1) and (a) (4) proscribe separate and distinct crimes, such that an accusation which alleged in a single count alternative violations of either subsection was duplicitous and subject to a special demurrer. However, Morgan's reliance upon *Peters* is misplaced. In the subsequent whole court decision in *Hogan v. State,* 178 Ga. App. 534 (343 SE2d 770) (1986), it was held that while there is authority for the construction of OCGA § 40-6-391 Morgan would place upon it, "our Supreme Court has clearly held otherwise. 'Subsection (a) (4) simply sets out an al-

ternative method of proving the crime established by the DUI statute.' . . . [Cits.] Accordingly, to the extent that they are inconsistent with the Supreme Court's holding that OCGA § 40-6-391 establishes the one crime and that subsections (a) (1) and (a) (4) merely set out two different methods of proving the same crime, *Peters* and . . . any similar cases are hereby overruled." (Emphasis omitted.) *Hogan*, supra at 535. The precedential authority of *Hadden v. State*, 180 Ga. App. 496 (3) (349 SE2d 770) (1986) likewise must be questioned in light of the binding contrary authority of *Hogan v. State*, supra, and Morgan's reliance upon that case also is misplaced. Thus, while it is impermissible to join distinct offenses in a single count of an indictment or accusation, it is also well settled that OCGA § 40-6-391 (a) establishes a single crime of driving while in a prohibited condition and that subsections (a) (1) and (a) (4) merely define different modes of committing that one crime. A charging instrument is not subject to the objection of duplicity or multifariousness where, as here, alternative methods of violating the one criminal statute at OCGA § 40-6-391 (a) are alleged in a single count. *Kuptz v. State*, 179 Ga. App. 150, 151 (4) (345 SE2d 670) (1986). See also *Scott v. State*, 207 Ga. App. 533, 534 (428 SE2d 359) (1993). The trial court correctly denied Morgan's amended motion to quash on this ground. His additional argument, that the solicitor has no authority under OCGA § 17-7-71 (f) to amend a UTC, is raised for the first time on appeal and will not be considered. It is "well settled that this court will not consider issues and grounds for objection which were not raised and passed upon in the trial court. [Cits.]" *Jefferson v. State*, 157 Ga. App. 324, 326 (2) (277 SE2d 317) (1981).

2. Morgan moved in limine to exclude the results of a State-administered intoximeter test showing his blood-alcohol content at .22 grams percent, on the ground that he had been denied his right to an independent test pursuant to OCGA § 40-6-392 (a) (3). After a hearing, the trial court found that Morgan had abandoned any right to an independent blood test and denied the motion to suppress. This evidentiary ruling is enumerated as error.

Only the arresting officer testified at the suppression hearing. This officer testified that he followed Morgan's vehicle for three miles, and that Morgan was traveling at sixty mph in a fifty-five mph zone and his truck was continuously weaving from the center lane to the white fog line. The officer detected the strong odor of alcohol on Morgan's person and observed that his speech was slurred and his eyes were red and glassy. He asked Morgan to exit the vehicle and noticed that Morgan was unsteady on his feet. In response to the officer's request that he perform a field sobriety test, Morgan tendered to the officer a pre-printed card which is captioned "Notice to Officers at Roadside Stop." This card recites that a motorist's manner of speech

frequently supplies cause for suspecting that the motorist is under the influence of intoxicants and directs that the card, along with the bearer's driver's license and insurance card, be immediately tendered to an officer at a roadside stop after which no further communication by the bearer with the officer is necessary. On the reverse side of this card, in pertinent part, are invocations of the bearer's right to remain silent, a refusal to participate in any field sobriety tests, refusal of consent to a search of the bearer's person or automobile, a demand for the presence of counsel — named on the card — during any questioning, and, under protest, a stated willingness to submit to a test of breath, blood or urine. The notice also recites: "If after the administration of [the police] test, you decide to charge me with D.U.I. then I request that I . . . be immediately afforded an additional test of my blood at the nearest available private facility at my own expense." The officer examined this card briefly and returned it to Morgan. They discussed procedures and Morgan was at that time adamant about having a blood test. The officer told Morgan that, after he submitted to a test designated by the police, he could get any test he wanted. Morgan was informed of his implied consent rights both immediately after his arrest and also at the police station before the officer administered a breath test on the Intoximeter 3000. He was specifically informed that, after he took the police test, if he wanted an additional test the officer would be "happy to take him and get one." The State-administered breath test showed Morgan's blood-alcohol content to be .22 grams percent. Morgan then witnessed the administration of a breath test to another individual, whose reading was only .17 grams percent. Believing that his own behavior was not as erratic as that of the individual whose blood-alcohol content was lower than his own, Morgan demanded another breath test and the officer obliged. The reading on this second breath test was still .22 grams percent. Morgan made no further demand for additional testing of either his breath or his blood, and the officer made no further inquiry. Although Morgan tendered a pre-printed card asserting his right to a *blood* test before submitting to the State-administered *breath* test, the evidence authorized the finding that once he took the State's test, he *chose* to demand a *second breath* test rather than insist upon a blood test, thereby abandoning the earlier demand. "Accordingly, [Morgan] *was* afforded the opportunity to obtain an independent test of his blood-alcohol content. The mere fact that [he] chose to repeat the breath test administered by the arresting officer furnishes no reason to suppress the results of the State's initial breathalyzer test. [Cit.] If [Morgan] had desired to undergo a different type of test, he should have requested it in a timely fashion [*after* the State's breath test]. 'It is the responsibility of the arrestee, not the officer, to designate the specifics of (any) independent testing and

the officer must be apprised by the arrestee of those specifics before the officer has a duty to facilitate the arrestee's election. (Cits.)' [Cit.] The evidence supports [a] conclusion that [Morgan] was not coerced into accepting one form of test over another. [Cit.]" (Emphasis supplied in part.) *Caldwell v. State*, 202 Ga. App. 729, 730-731 (2) (415 SE2d 653) (1992). See also *Brannan v. State*, 195 Ga. App. 709, 710 (2) (394 SE2d 562) (1990). The trial court's determination that Morgan abandoned any earlier demand for a blood test after being afforded a second breath test is supported by the evidence and therefore is not clearly erroneous.

3. Although Morgan enumerates the general grounds, the two breath tests of .22 grams percent is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to authorize a rational trier of fact to reasonably find that Morgan was operating a motor vehicle with a prohibited blood-alcohol content in violation of OCGA § 40-6-391 (a) (4) beyond a reasonable doubt. See *Wiggley v. State*, 204 Ga. App. 583 (1) (420 SE2d 82) (1992).

4. Morgan was sentenced to 12 months in jail, which jail sentence was suspended upon payment of a $1,200 fine and 30 hours of community service. He enumerates the fine portion of his suspended sentence as error, contending it is in excess of the statutory maximum.

This was Morgan's second DUI conviction within a five-year period. Accordingly, the maximum fine which could be imposed pursuant to OCGA § 40-6-391 (c) (2) (A) was $1,000. However, the State argued that Morgan should nevertheless be fined as a third time DUI violator because a previous alcohol-related moving violation was disposed of by a guilty plea to reckless driving. Without responding to this argument, the trial court stated that it was imposing a $1,200 fine and that is the amount noted as a fine on the back of the UTC. Although the citation itself does not itemize that $1,200 as the sum of authorized fines plus additional penalties, the State contends the actual fine is only $976, with the remaining $224 being comprised of permissible court costs. The State explains these additional costs as follows: $2 for the Library Fund; $50 to the Department of Revenue (POP); $25 to the Victims of Crime Fund; $49 to the Police Officer's Training Fund Annuity; and $98 to the Jail Construction Fund. However, there is no indication in the record that the penalties assessed against Morgan consisted of a fine plus these other authorized costs and penalties. Rather, the record shows only that the trial court announced and entered a "fine" of $1,200 after the parties made a brief argument concerning whether Morgan should be fined in accordance with the statute pertaining to third time DUI offenders as opposed to that applicable to second time DUI offenders.

Inasmuch as we cannot determine from the record whether the trial court imposed a permissible fine plus permissible costs and pen-

alties, or whether an impermissible fine was in fact imposed, and because any uncertainty or ambiguity ought to be resolved in favor of imposing the lesser penalty, cf. *Hartley v. State*, 159 Ga. App. 157, 162 (6) (282 SE2d 684) (1981), we are constrained to hold that the portion of the fine in excess of $1,000 must be vacated.

*Judgment of conviction affirmed. Sentence affirmed in part, vacated in part. Birdsong, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 11, 1994 —

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Bentley C. Adams III*, for appellant.
*John H. Cranford, Solicitor*, for appellee.