### S94A1583. KEVINEZZ v. THE STATE.
(454 SE2d 441)

SEARS, Justice.

The appellant, Maria Ruth Kevinezz, was convicted of vehicular homicide and following too closely, and was sentenced to eight years in prison for vehicular homicide and to twelve months in prison for following too closely, to be served concurrently with the vehicular homicide sentence.[1] Kevinezz appeals, contending, among other things, that OCGA § 40-6-391 (a) (5) is unconstitutional and that her indictment failed to put her on notice that she could be convicted of vehicular homicide based on a violation of § 40-6-391 (a) (5). We conclude that § 40-6-391 (a) (5) is constitutional, but that Kevinezz's indictment was defective and requires that we reverse her conviction for vehicular homicide.

1. We first address Kevinezz's contention that § 40-6-391 (a) (5) is vague and indefinite in that the average person has no knowledge of what amount of marijuana or cocaine in the blood or urine constitutes "any amount" within the meaning of § 40-6-391 (a) (5) until he or she learns of the results of the state's lab tests. We find no merit to this contention. " 'All the Due Process Clause requires is that the law give sufficient warning that men [and women] may conduct themselves as to avoid that which is forbidden.' " *Lester v. State,* 253 Ga. 235, 236 (1) (320 SE2d 142) (1984) (quoting *Rose v. Locke,* 423 U. S. 48, 49-50 (96 SC 243, 46 LE2d 185) (1975)). As "any amount" necessarily means any amount greater than zero, we hold that § 40-6-391 (a) (5) provides adequate notice that a person who ingests marijuana or any other drug specified in § 40-6-391 (a) (5) and then drives a motor vehicle does so at his or her own peril of violating § 40-6-391 (a) (5). See *Lester,* 253 Ga. at 236-237 (1); *Webb v. State,* 253 Ga. 686

---

[1] The crimes occurred on July 2, 1991. Kevinezz was indicted on October 30, 1991, and was found guilty and sentenced on November 5, 1993. She filed a notice of appeal to the Court of Appeals on December 1, 1993, and the appeal was docketed in the Court of Appeals on March 24, 1994. The Court of Appeals transferred the appeal to this Court on July 12, 1994. The appeal was submitted for decision without oral arguments on September 6, 1994.

(324 SE2d 188) (1985). (In *Lester* and *Webb* we rejected the contention that § 40-6-391 (a) (4) is unconstitutionally vague because the average person cannot detect the prohibited conduct of driving with a blood-alcohol count of .12 percent (now .10 percent) until arrested and given a chemical test. We concluded that the statute provided adequate notice that if an individual consumed "a substantial amount of alcohol, . . . he chooses to drive at his own peril." *Lester*, 253 Ga. at 236-237. Accord *Webb*, 253 Ga. at 686.)[2]

2. We now turn to Kevinezz's contention that the indictment failed to put her on notice that she could be convicted of vehicular homicide by causing the death of another person while driving in violation of OCGA § 40-6-391 (a) (5).

Before proceeding to the specific language of Kevinezz's indictment, we will review the Code sections relevant to this contention. Under OCGA § 40-6-393, vehicular homicide can be committed by causing the death of another person while driving in violation of OCGA §§ 40-6-390 or 40-6-391. Section 40-6-390 makes it illegal to drive "in reckless disregard for the safety of persons or property." Section 40-6-391 provides, in relevant part, that

> (a) [a] person shall not drive or be in actual physical control of any moving vehicle while:
>
> . . .
>
> (2) under the influence of any drug to the extent it is less safe for the person to drive;
>
> . . .
>
> (5) . . . there is any amount of marijuana or a controlled substance, as defined in Code Section 16-13-21, present in the person's blood or urine, or both.

Under § 40-6-391 (a) (2), impaired driving ability is an element of the crime that the state must prove to obtain a conviction. See *Cargile v. State*, 244 Ga. 871, 873 (1) (262 SE2d 87) (1979). However, under § 40-6-391 (a) (5), whether the person is a less safe driver is irrelevant; to obtain a conviction, the state need only prove the physical act of driving with any amount of the specified drugs in the blood or urine. *Stevenson v. State*, 264 Ga. 892 (453 SE2d 18) (1995); *Lester*, 253 Ga. at 237-238 (4).

In this case, Count 1 of the indictment charged Kevinezz with vehicular homicide. It alleged she caused the death of the victim by

---

[2] In this case, "we do not address whether § 40-6-391 (a) (5) could be constitutionally applied where a person has been forced to ingest marijuana involuntarily or against the person's will." *Stevenson v. State*, 264 Ga. 892, 895, n. 3 (453 SE2d 18) (1995).

driving her vehicle "in reckless disregard for the safety of persons and property by driving under the influence of drugs." Count 2 charged her with "driving under the influence of drugs to the extent it is less safe for the person to drive." The trial court directed a verdict on Count 2 of the indictment on the ground there was no evidence of impaired driving ability. On Count 1, the court charged the jury, in relevant part, that vehicular homicide could be committed by causing the death of another person by "driv[ing] or be[ing] in actual physical control of a moving motor vehicle while there is any amount of marijuana or cocaine present in the person's blood or urine."[3] Kevinezz contends that the indictment only put her on notice she could be convicted if the marijuana or cocaine had made her a less safe driver and did not put her on notice that she could be convicted solely on the physical act of driving with any amount of marijuana or cocaine in her blood or urine under § 40-6-391 (a) (5). We agree.

(a) Although *Scott v. State*, 207 Ga. App. 533 (428 SE2d 359) (1993), decided an identical issue adversely to Kevinezz's position, we conclude that *Scott* was wrongly decided and must be overruled. In that case, the accusation charged the defendant "with unlawfully '[o]perating a motor vehicle . . . while under the influence of alcohol.'" Following a bench trial the trial court ruled that, because there was no evidence of impaired driving ability, the evidence was insufficient to convict Scott of violating § 40-6-391 (a) (1), which makes it a crime to drive "[u]nder the influence of alcohol to the extent that it is less safe for the person to drive." However, the trial court ruled that the evidence was sufficient to convict Scott of violating § 40-6-391 (a) (4), which then made the physical act of driving with a blood-alcohol count of .12 percent (now .10 percent) illegal. It was not, and still is not, necessary to prove impaired driving ability to convict under § 40-6-391 (a) (4). *Scott*, 207 Ga. App. at 534-535. Scott objected that the trial court could not find him guilty under § 40-6-391 (a) (4) because the accusation only alleged that he was "driving under the influence of alcohol" and thus only put him on notice that he could be convicted of violating § 40-6-391 (a) (1). Reasoning that § 40-6-391 established one crime of driving under the influence, and that subsections (a) (1) and (a) (4) merely established two different ways of driving under the influence, the Court of Appeals held that the accusation was sufficient to give Scott notice that the state might seek to prove the crime pursuant to either method. *Scott*, 207 Ga. App. at 534, 535, n. 1.

The Court of Appeals also ruled against Scott on a second

---

[3] The state toxicologist testified that he found evidence of marijuana and cocaine metabolites in Kevinezz's urine.

ground. In this regard, the Court relied on the rule that

> when an indictment or accusation charges a crime which is
> capable of being committed in more than one way, but fails
> to charge the manner in which the crime was committed, the
> indictment or accusation is subject to special demurrer be-
> cause a defendant is entitled to know how the State will
> prove the crime charged.

Id. at 535. The Court held that such objections had to be made before
arraignment or are deemed waived. Because Scott did not raise his
objection until closing argument, the Court held that he had waived
any right to object to the accusation. Id. at 535.

(b) Initially, we will address why we disagree with *Scott's* holding
that where an indictment charges a defendant with "driving under
the influence of alcohol," the defendant is put on notice that he could
be convicted of the crime in any of the different ways in which it can
be committed. Whatever the merits of this rule with regard to crimes
other than "driving under the influence" that can be committed in
more than one way, it has no application where the name of the al-
leged crime, here "driving under the influence," is descriptive of one
or more of the ways in which the crime may be committed but is not
descriptive of others. In such cases, the rule in *Scott* runs headlong
into the rule that when a crime can be committed in more than one
way, the prosecution cannot be permitted to prove that crime in a
different manner than that alleged in the indictment. See *Sapp v.
State*, 184 Ga. App. 527, 528 (362 SE2d 406) (1987). In such cases, we
conclude that the defendant has the right to rely on the specific man-
ner of committing the crime that is alleged in the indictment.

Turning to the language of the indictment in this case, we con-
clude that the phrase "driving under the influence of drugs" describes
a specific method by which the crime of driving under the influence
may be proved. See *Hogan v. State*, 178 Ga. App. 534, 536 (343 SE2d
770) (1986). It has been held the phrase "driving under the influence
of alcohol" has a "universally recognized and understood meaning" so
that reasonable persons could not differ as to its interpretation. *Car-
gile*, 244 Ga. at 873. That meaning is that a person is under the influ-
ence of alcohol " 'when it appears that it is less safe for such person to
operate a motor vehicle.' " *Cargile*, 244 Ga. at 873, 874 (quoting *Cook
v. State*, 220 Ga. 463, 465 (2) (139 SE2d 383) (1964)). Clearly, the
phrase "under the influence of drugs" would have the same univer-
sally understood meaning as "under the influence of alcohol." The
foregoing universally understood meaning is embodied in the lan-
guage of § 40-6-391 (a), which couples the term "under the influence"
with the concept of being a less safe driver, see § 40-6-391 (a) (1), (2),

and (3). Thus, in *Hogan* the Court of Appeals properly held that the phrase "driving under the influence," with respect to both alcohol and drugs, and the phrase "to the extent it is less safe for the person to drive," see § 40-6-391 (a) (1), (2), and (3), "are not two separate elements . . . [but] are equivalent concepts describing [the same] physical condition." *Hogan*, 178 Ga. App. at 536. Accordingly, an indictment or accusation charging a defendant with driving under the influence of alcohol or drugs, even if it does not specify "to the extent it was less safe for [the defendant] to drive," is an indictment that charges the defendant with violating § 40-6-391 (a) in one of the three ways specified by subsections (a) (1), (2), or (3). *Hogan*, 178 Ga. App. at 535-537 (indictment charging defendant with "driving under the influence of alcohol" charged defendant with violating § 40-6-391 (a) (1)). Conversely, such an indictment would not put a defendant on notice that he or she could be convicted under § 40-6-391 (a) (4) or (5), which do not contain the phrase "under the influence" and do not require the state to prove impaired driving ability, *Hogan*, 178 Ga. App. at 536; *Lester*, 253 Ga. at 237-238 (4).

Given the foregoing considerations, we hold that Kevinezz's indictment failed to put her on notice that she could be convicted of vehicular homicide based on a violation of § 40-6-391 (a) (5). See *Sapp v. State*, supra at 528 (if a defendant is charged with violating § 40-6-391 (a) (4), he is not put on notice that he may be convicted of violating § 40-6-391 (a) (1)). We overrule *Scott* to the extent it is contrary to this holding.

(c) It is now necessary to address whether Kevinezz waived her right to raise this issue by failing to specially demur to the indictment before arraignment. As previously noted in this opinion, the Court in *Scott* ruled that a defendant charged with "driving under the influence of alcohol" must specially demur to the indictment before arraignment in order to avoid waiving any objection to a jury charge on § 40-6-391 (a) (4). This ruling was predicated on the idea that Scott's indictment alleged a crime that could be committed in more than one way but failed to specify the way in which it was committed by Scott. However, as the discussion in Division 2 (b) herein demonstrates, the indictment's charge against Scott of "driving under the influence of alcohol" was the equivalent of specifically charging Scott with violating § 40-6-391 (a) (1) by driving under the influence of alcohol to the extent it was less safe for him to drive. Similarly, here, the indictment's charge against Kevinezz in Count 1 of "driving under the influence of drugs" amounted to a specific charge of violating § 40-6-391 (a) (2) by driving under the influence of drugs to the extent it was less safe for her to drive. Thus Kevinezz's indictment did specify a method by which the state alleged she committed the crime, and she was not required to specially demur to the indictment in order to

avoid waiving her right to object to a jury charge on a method of committing the crime that was not specified in the indictment. To the extent *Scott* is inconsistent with this holding, it is overruled.

(d) For the foregoing reasons, we conclude that Kevinezz's indictment failed to put her on notice that she could be convicted of vehicular homicide for violating § 40-6-391 (a) (5), and we conclude that she did not waive her right to raise this issue by not filing a special demurrer to the indictment. Moreover, although the jury was arguably also charged that it could find Kevinezz guilty of vehicular homicide on the ground she caused the death of the victim while driving recklessly in violation of § 40-6-390,[4] the jury only returned a general verdict of guilty on Count 1. We have held that where we cannot discern whether a jury relied on an invalid or valid theory in returning a general verdict of guilty, we must set aside the conviction. *Crawford v. State*, 254 Ga. 435, 439 (1) (330 SE2d 567) (1985). As we cannot discern whether the jury in this case relied on a valid or invalid theory for conviction, we must set aside Kevinezz's conviction for vehicular homicide.

3. Finally, we conclude that the evidence was sufficient to support Kevinezz's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). For this reason, and because none of Kevinezz's other contentions relate to her conviction of following too closely, we affirm that conviction. Because of the holding in Division 2, supra, it is unnecessary to address Kevinezz's remaining enumerations of error.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 27, 1995.

*Michael B. King*, for appellant.
*Michael J. Bowers*, Attorney General, *Robert E. Keller*, District Attorney, *Todd E. Naugle*, Assistant District Attorney, for appellee.

---

[4] As we decide the present issue favorably to Kevinezz, we will assume, for purposes of this issue, that the indictment and jury charge were sufficient to permit the jury to consider whether Kevinezz caused the victim's death while engaged in reckless driving, based on an act of recklessness other than driving under the influence.