## A00A0680. THOMPSON v. THE STATE.
### (534 SE2d 151)

RUFFIN, Judge.

Rebecca Thompson was convicted of driving without insurance. She appeals, contending that the evidence was insufficient to support the conviction and that the trial court erred in charging the jury. Because the trial court failed to charge an essential element of the crime, we reverse.

On February 15, 1999, Sergeant David Lamb of the Peachtree City Police Department stopped Thompson's car because of a defective taillight. Thompson was unable to produce a driver's license or proof of insurance, although Lamb determined through a computer check that she had a valid driver's license. Thompson told Lamb that her insurance had been cancelled three months earlier but that she thought she had applied to have it reinstated. Lamb issued Thompson a Uniform Traffic Citation (UTC) charging her with the offense of "no insurance" in violation of OCGA § 40-6-10. At trial, Thompson admitted that she in fact had no insurance on the date she was stopped but claimed that she *thought* she had insurance.

At trial, the court refused to give Thompson's requested instruction that the State must prove she *knowingly* operated a motor vehicle without insurance. Instead, the court charged that Thompson could be convicted if she operated the vehicle without *proof* of insurance or failed to provide proof of insurance to the officer. Based on these instructions, the jury found Thompson guilty of the offense of "No Insurance."

1. On appeal, Thompson contends that the UTC charged her with violating OCGA § 40-6-10 (b), which makes it illegal to "knowingly operate[ ] . . . a motor vehicle without effective insurance on such vehicle." She claims the trial court erred in refusing to charge that the State was required to prove that she *knowingly* operated a motor vehicle without insurance. The State, by contrast, contends that the UTC charged Thompson with violating OCGA § 40-6-10 (a) (1), which makes it illegal to drive with no *proof* of insurance. The

State asserts that a defendant's knowledge of the lack of insurance coverage is irrelevant in a prosecution under subsection (a) (1) and that the trial court therefore properly refused to give the proposed instruction.

The resolution of this appeal thus turns on whether the UTC charged Thompson with violating OCGA § 40-6-10 (a) (1) or (b). We have previously held that "[f]ailure to keep proof of insurance coverage [subsection (a) (1)] and driving a vehicle without liability insurance [subsection (b)] are separate offenses."[1] Upon conviction of either offense, the defendant is subject to the same punishment — i.e., "a fine of not less than $200.00 nor more than $1,000.00 or imprisonment for not more than 12 months, or both."[2] The only difference is that, if a defendant is charged with no proof of insurance, he may reduce his punishment to a $25 fine by showing the court that insurance coverage was actually in place when the citation was issued.[3]

It is important to note that subsections (a) (1) and (b) do not simply describe alternative ways of committing a single crime, but rather describe two separate offenses.[4] This is in contrast to the DUI statute, OCGA § 40-6-391, which sets forth a single crime that may be committed in a variety of ways.[5] Thus, we have held that a single UTC may properly charge a defendant with alternative methods of violating OCGA § 40-6-391.[6] However, where a UTC charges a defendant with violating the statute in a particular way, the defendant may not be convicted of violating the statute in a different manner.[7]

In *Kevinezz v. State*, the indictment alleged that the defendant violated the statute by "driving under the influence of drugs to the

---

[1] (Punctuation omitted.) *Jones v. State*, 195 Ga. App. 569, 570 (1) (394 SE2d 387) (1990).

[2] OCGA § 40-6-10 (a) (1), (b).

[3] OCGA § 40-6-10 (a) (4). Thus, under the plain language of the statute, a defendant charged with no *proof* of insurance may be convicted without proof that she knowingly operated the vehicle without insurance. If the defendant cannot show that she had insurance in place at the time the citation was issued, she is subject to the same penalties as if she were convicted under subsection (b), even though she may have believed such insurance was in place. Therefore, it would appear that the State could circumvent the knowledge requirement of subsection (b) by simply charging the defendant under subsection (a) (1), since a defendant who did not in fact have effective insurance coverage in place will not be able to provide proof of such coverage as contemplated by subsection (a) (4). (Indeed, this is what the State claims to have done in this case.) Although a literal reading of the statute compels this conclusion, we question whether the legislature intended such a result. Nevertheless, because we construe the UTC in this case as charging a violation of subsection (b), we need not consider the effect of this apparent inconsistency.

[4] *Jones*, supra.

[5] See *Morgan v. State*, 212 Ga. App. 394-395 (1) (442 SE2d 257) (1994).

[6] See id.

[7] See *Kevinezz v. State*, 265 Ga. 78, 79-83 (2) (454 SE2d 441) (1995).

extent it is less safe for [her] to drive."[8] The indictment also charged her with vehicular homicide, alleging that she showed reckless disregard for the safety of another by "driving under the influence of drugs."[9] The Supreme Court held that the indictment did not put the defendant on notice that she could be convicted of violating OCGA § 40-6-391 (a) (5), which prohibits driving while there is any amount of drugs in a person's blood or urine,[10] but only put her on notice that she could be convicted of violating OCGA § 40-6-391 (a) (2), which requires proof that the drugs made her a less safe driver. In so holding, the Court noted that "the name of the alleged crime, . . . 'driving under the influence,' is descriptive of one or more of the ways in which the crime may be committed but is not descriptive of others."[11] The Court stated that "the defendant has the right to rely on the specific manner of committing the crime that is alleged in the indictment."[12] The Court also held that the defendant did not waive the right to raise this issue on appeal by failing to demur to the indictment before trial. In so holding, the Court reasoned that:

> [the] indictment did specify a method by which the state alleged [defendant] committed the crime, and she was not required to specially demur to the indictment in order to avoid waiving her right to object to a jury charge on a method of committing the crime that was not specified in the indictment.[13]

In this case, the UTC charged Thompson with committing the offense of "no insurance" in violation of "OCGA § 40-6-10." We note that, under Georgia law, "the description of the offense charged prevails over any Code section cited."[14] As the Supreme Court noted in *Kevinezz*,

> where the name of the alleged crime . . . is descriptive of one or more of the ways in which the crime may be committed but is not descriptive of others . . . the prosecution cannot be permitted to prove that crime in a different manner than that alleged in the indictment.[15]

---

[8] Id. at 80 (2).

[9] Id. at 79-80 (2).

[10] This subsection has since been redesignated as subsection (a) (6).

[11] *Kevinezz*, supra at 81 (2) (b).

[12] Id.

[13] Id. at 82-83 (2) (c).

[14] (Punctuation omitted.) *In the Interest of B. C. G.*, 235 Ga. App. 1, 3 (1) (508 SE2d 239) (1998).

[15] *Kevinezz*, supra at 81 (2) (b).

This rule applies with even more force in this case, where the relevant statute sets forth two different offenses, and not merely two ways of committing a single offense. Thus, because the UTC charged Thompson with only one crime and described that crime as "no insurance" rather than "no proof of insurance," we believe it is properly construed as charging a violation of OCGA § 40-6-10 (b), rather than a violation of OCGA § 40-6-10 (a) (1). Because subsection (b) requires proof that the defendant *knowingly* operated the vehicle with no insurance, Thompson was entitled to a jury instruction as to that element. It is immaterial that she did not specially demur to the UTC, since the UTC did in fact charge her with a crime. Accordingly, the trial court erred in failing to charge that knowledge of the lack of insurance is an essential element of the offense.[16]

2. Thompson also argues that the evidence was insufficient to support a conviction under OCGA § 40-6-10 (b) because there was no evidence she knowingly operated the vehicle without insurance. As we have previously recognized, however, "[a] conviction for a violation of this Code section will not be precluded merely by a defendant's asserted lack of knowledge that his insurance policy had expired. Knowledge may be inferred from other facts and circumstances."[17]

Thompson admitted to the police officer that her insurance had been cancelled three months earlier, and she failed to present any evidence that she had obtained new insurance as of the date she was cited. Under these circumstances, the credibility of her claim that she believed she had insurance coverage is for the jury to decide under proper instructions from the trial court.[18]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED APRIL 21, 2000 —
RECONSIDERATION DENIED MAY 11, 2000 — ▮▮▮▮▮▮

Rebecca A. Thompson, *pro se.*
Steven L. Harris, *Solicitor,* for appellee.

---

[16] See *Hunter v. State*, 228 Ga. App. 846-847 (493 SE2d 44) (1997) (vacating conviction of kidnapping with bodily injury for failure to charge essential element).

[17] *Quaile v. State*, 172 Ga. App. 421, 423 (5) (323 SE2d 281) (1984).

[18] See id.