A03A0084. AUGUSTIN v. THE STATE.
(580 SE2d 640)

JOHNSON, Presiding Judge.

Etienne Augustin was charged with failing to report an accident, failing to stop at or return to the scene of an accident, driving without insurance, failing to maintain lane, and failing to use a turn signal.[1] A jury found him guilty on all counts, except that of failing to use a turn signal. Augustin appeals from the judgment of conviction entered on the verdict and the denial of his motion for new trial.

---

1. Augustin argues that the trial court erred in denying his motion for a directed verdict of acquittal on the charge that he drove without having insurance coverage. This enumeration is without merit.

There is no error in denying a defendant's motion for directed verdict of acquittal where the evidence is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt.[2] The evidence presented at trial, viewed in a light supporting the verdict,[3] shows that Augustin was traveling on I-75 when he suddenly cut across three lanes of traffic, in front of David Aldridge's car, toward an off-ramp. Aldridge slammed on his brakes, but was unable to avoid colliding with Augustin's vehicle. Aldridge's car spun around, and Aldridge watched as Augustin slowed his car down momentarily, then suddenly "floored it." Aldridge followed Augustin's car off the highway and chased it for about 15 minutes, until he saw a police car. Aldridge stopped and gave the police officer the tag number to Augustin's car, which matched the tag number which had already been reported to police and broadcast over the police radio. The officer ran a computer check on the tag number, and then he and Aldridge drove to the registered owner's address indicated by the computer.

When Aldridge and the officer arrived at the address, Augustin and several other officers were already there. Aldridge immediately identified Augustin and his car as having been involved in the collision. One of the officers examined the damage to both cars and concluded that Augustin's car was indeed involved in the collision.

When a police officer asked Augustin for proof of insurance, Augustin indicated that the insurance card was in his glove compartment. The officer found the card, but was suspicious of its validity because some of the text had been "hand-typed" on a typewriter, in a different font and with different ink from the rest of the text. Over Augustin's objection, the officer testified that he telephoned the insurance company shown on the card and was told that Augustin did not have a valid policy with that company. Augustin told the officer that he had insurance. Despite the officer's repeated requests, Augustin did not produce a valid insurance card. Aldridge testified that he never received any information that Augustin had insurance, and that his car was never repaired. Augustin did not testify at trial.

On appeal, Augustin asserts that he was entitled to a directed verdict of acquittal because the circumstantial evidence that he was driving without insurance was insufficient to support a conviction.

---

[2] *Smith v. State*, 267 Ga. 502, 503 (3) (480 SE2d 838) (1997).
[3] Id.

The fact that the evidence was circumstantial, however, does not mean that it was insufficient, since a conviction may properly be based upon circumstantial evidence.[4] Because the jury heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of a hypothesis produced by the evidence or lack thereof than is an appellate court.[5] Thus, this court will not disturb its finding unless the verdict is insupportable as a matter of law.[6]

Here, the evidence shows that Augustin was involved in a collision, slowed down briefly, fled the scene, and then produced an insurance card which, in the officer's opinion, did not appear to be authentic. When the officer contacted the insurance company, someone there verified that the card was not valid. Augustin never did produce a valid insurance card, and the victim of the collision was never given any information regarding Augustin's insurance coverage nor ever contacted by any insurance company regarding the loss.

Even where a defendant claims that he did not know he lacked effective insurance coverage, knowledge may be inferred from other facts and circumstances.[7] In addition to the above facts, a jury could have found that the lack of insurance gave Augustin a motive to flee the scene of the accident. Because the evidence was sufficient to sustain Augustin's conviction of driving without insurance,[8] the trial court did not err in denying his motion for a directed verdict of acquittal.

2. Augustin contends that the trial court gave confusing and misleading jury instructions. Specifically, he complains that the court's instructions incorrectly suggested that the state was not required to prove that he intended to commit the moving traffic violations. Augustin urges that the offenses of failing to stop at or return to the scene of an accident,[9] and driving without insurance,[10] require a showing of mental fault. This enumeration presents no grounds for reversal.

The trial court instructed the jury that the moving violations defined in the Official Code of Georgia, Title 40, Chapter 6, are strict liability offenses, and that the state is therefore not required to prove mental fault as to those charges. Indeed, violations of the offenses set forth in Title 40, Chapter 6, unless otherwise indicated, are strict lia-

---

[4] See *Nolan v. State*, 255 Ga. App. 63, 64 (1) (564 SE2d 464) (2002).
[5] Id.
[6] Id.
[7] *Thompson v. State*, 243 Ga. App. 878, 881 (2) (534 SE2d 151) (2000).
[8] See *Miller v. State*, 243 Ga. App. 764, 769 (16) (533 SE2d 787) (2000).
[9] OCGA § 40-6-270.
[10] OCGA § 40-6-10 (b).

bility offenses.[11] As such, the state is not required to prove mental fault or mens rea in some of the offenses charged here, namely, failing to maintain lane and failing to use a turn signal.[12] Therefore, the court's instruction defining the standard for strict liability offenses was appropriate.[13]

As Augustin points out, though, OCGA § 40-6-10 (b) requires proof that the defendant knowingly operated the vehicle with no insurance, and OCGA § 40-6-270 requires proof that the defendant knowingly failed to stop and comply with the statute's mandates.[14] Even so, the trial court's charge on intent was sufficient in this case.

In addition to charging the jury on strict liability, the court instructed the jury that the defendant is not presumed to have acted with criminal intent, but that the jury may find such intention or the absence of it upon a consideration of words, conduct, demeanor, motive, and other circumstances connected with the acts for which the defendant is being tried. The court added that criminal intent must be proved by the state in every prosecution, and that criminal intent does not mean an intention to violate the law or to violate a penal statute, but simply means to intend to commit the act which is prohibited by statute. These were correct statements of the law.[15]

Viewed in its entirety, the court's charge on criminal intent was sufficient to inform the jury that it had to find that Augustin intended to evade the duty imposed by OCGA § 40-6-270,[16] and that it had to find that he knowingly drove without insurance coverage.[17] Such intent had to include, as a matter of logic and law, the underlying knowledge upon which to form the intent.[18] Reading the charge as a whole, we cannot say that it confused or misled the jury or in any manner resulted in an unfair statement of the law.[19] This enumeration is without merit.

3. Augustin contends that the trial court erred in failing to instruct the jury that it could not convict him unless it found that the offenses were committed in the manner charged in the accusation. He points out that Count 3 of the accusation charges him with knowingly operating a motor vehicle without having insurance, but that

---

[11] *Hoffer v. State*, 192 Ga. App. 378, 380 (1) (384 SE2d 902) (1989).

[12] Id. (state not required to prove defendant intended to run a traffic light, or even that he knew the light was red); see, e.g., *Arnold v. State*, 228 Ga. App. 470, 471-472 (1) (491 SE2d 819) (1997) (violation of rules of the road, e.g., disobeying a traffic control device, is a strict liability offense).

[13] See *Hoffer*, supra.

[14] See *Tidwell v. State*, 216 Ga. App. 8, 11 (3) (453 SE2d 64) (1995).

[15] See id.

[16] See id.

[17] See *Thompson*, supra at 881 (1).

[18] See *Tidwell*, supra.

[19] See generally *Brown v. State*, 182 Ga. App. 682, 683 (1) (356 SE2d 663) (1987).

the court instructed the jury that he was required to keep *proof* of insurance coverage in the vehicle at all times. Augustin correctly argues that failing to have proof of insurance coverage,[20] and driving without liability insurance,[21] are separate offenses.[22] Yet, in spite of this incorrect instruction, reversal is not required.

Trial counsel made no contemporaneous objections and no exceptions to the court's charge to the jury. Such silence waives the right to raise this issue on appeal unless there has been a substantial error which was harmful as a matter of law.[23] Inasmuch as the court's charge was a misstatement of applicable law,[24] our task is to determine whether it was harmful error.

The indictment alleges that Augustin drove without insurance. As discussed in Division 1, the record shows sufficient evidence, including testimony from the police officer and the victim of the hit and run accident, to authorize a finding that Augustin was driving without insurance coverage at the time of the collision. It follows that the error in the jury charge was harmless.[25]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED MARCH 27, 2003.

*Tara D. Dickerson*, for appellant.

*Joseph J. Drolet, Solicitor-General, Jennifer L. Moore, Assistant Solicitor-General*, for appellee.

---

[20] OCGA § 40-6-10 (a) (1).
[21] OCGA § 40-6-10 (b).
[22] See *Thompson*, supra at 879 (1).
[23] OCGA § 5-5-24 (c).
[24] See *Thompson*, supra.
[25] See generally *Wiser v. State*, 242 Ga. App. 593-594 (1) (530 SE2d 278) (2000); *Miller v. State*, 240 Ga. App. 18, 19-20 (3) (522 SE2d 519) (1999).