## A03A2102. BROADNAX-WOODLAND v. THE STATE.
(595 SE2d 350)

BARNES, Judge.

A jury convicted Jacquelyn Broadnax-Woodland of driving under the influence, failing to maintain her lane, disobeying a traffic control device, and having no proof of insurance. The trial court sentenced her to serve 24 hours in jail and complete the remainder of her 18-month sentence on probation. She appeals, arguing that the trial court erred in admitting the police report into evidence and allowing the jury to consider the report during deliberation, and erred in denying her motion for a directed verdict on the charge of driving with no proof of insurance. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Viewed in that light, the evidence at trial established that the defendant passed a police officer and ran a red light on Memorial Drive in DeKalb County. The officer observed the defendant speeding and weaving, and pulled her over. Her eyes were half-closed, and the officer had to knock on the window before she rolled it down. Her speech was slurred and difficult to understand, and she could not produce her driver's license or proof of insurance, and the officer smelled alcohol. When she got out of the car in response to the officer's instruction, she staggered and swayed, and her clothes were in disarray. The officer administered the horizontal gaze nystagmus test, which the defendant failed, but when he asked her to perform the walk and turn test, the defendant began dancing and told him to do what he had to do because she was not going to take any more tests.

The officer placed the defendant under arrest and took her to the DeKalb County jail, where a deputy sheriff attempted three times to administer a breathalyzer test to the defendant. Each time, despite instructions to the contrary, she blew repeated short breaths into the machine instead of long steady breaths, and the machine did not get a sufficient sample to test for alcohol. After the third unsuccessful try, the arresting officer determined that the defendant had refused to take the test.

1. The defendant contends that the trial court committed reversible error by allowing the police officer's arrest report to go out with the jury during its deliberations. At trial, the defendant objected to the admission of the report based on the "continuing witness" rule, because allowing the jury to reread the report during its delibera-

tions would lend the written report more weight than the oral testimony that is heard only once. The State argued that, because the defendant so thoroughly cross-examined the officer regarding the contents of the report and impeached his credibility on certain points, that the report was admissible as a prior consistent statement. The trial court relied on *Evans v. State*, 253 Ga. App. 71 (1) (558 SE2d 51) (2001), and admitted the report.

In *Evans*, a panel of this court found no error in admitting a police report into evidence as a prior consistent statement after the defendant raised an issue regarding the validity of the report's contents during cross-examination. Id. at 75. The court noted specifically that the defendant waived his continuing witness objection by failing to raise it at trial. Id. In *Cox v. State*, 263 Ga. App. 266, 268-269 (2) (b) (587 SE2d 205) (2003), a case similar to the one before us, this court distinguished *Evans*, holding that, in the presence of a continuing witness objection and the absence of a charge that the police officer fabricated his testimony, the trial court erred in allowing the report to go out with the jury. "Allowing the narrative portion of the police report to go out with the jury violated the continuing witness rule." (Punctuation and footnote omitted.) Id. at 268.

Concluding that the trial court erred, we next consider whether the error was harmful or harmless. An error is harmless if it is "highly probable that the error did not contribute to the judgment." (Citation and punctuation omitted.) *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

> The highly probable test avoids the evils of inadequate or excessive stringency by making affirmance conditional on high probability that error did not affect the judgment. The test compels a judge to go beyond a first glance for affirmance or a fleeting glimpse for reversal. It compels him to exercise his mind in the exercise of his discretion, to go beyond the appearances of the result to an examination of what causal links there may be between error and the judgment. It keeps judicial discretion within the ample bounds of reason. It can greatly improve the net worth of the judicial process as it thus holds down excesses either of affirmance that recklessly dampens assurance of a fair day in court or of reversal that needlessly calls for still another fair day at the expense of litigants who are still awaiting their first day in court.

(Citation, punctuation and emphasis omitted.) Id.

The defendant in this case argues that the error was harmful, because she impeached the arresting officer's testimony regarding

certain aspects of his arrest report during cross-examination, but his written version of the arrest was unduly emphasized when the jury took the report out with them. The details on which the defendant arguably impeached the officer, however, were not central to the issue of whether or not the defendant was guilty of the crimes alleged. For example, the officer testified that the defendant failed to maintain her lane after she ran a red light while he stated in the report that she failed to maintain her lane before she ran a red light. He testified that she ran the light at one intersection, but stated in the report that she ran the light at another intersection. He testified that he smelled alcohol, but failed to check the relevant box on the report. He testified the defendant was wearing a black dress, but the report indicated she was wearing a white dress. The court in *Cox* found harmless the admission of the report, because it was consistent with both the officer's and the defendant's testimony. *Cox v. State*, supra, 263 Ga. App. at 268. In this case the defendant did not testify, but none of the disputed elements in the report were central to the issue of the defendant's guilt. Therefore we conclude that its admission was harmless error.

2. The defendant also contends that the trial court erred in denying her motion for a directed verdict on the charge of driving with no proof of insurance, contending that the State failed to prove the necessary element of mens rea. The accusation against the defendant charged her "with the offense of NO PROOF OF INSURANCE on October 28, 2002, by *knowingly* operating a vehicle without proof of effective insurance and without proof of an approved plan of self insurance in violation of OCGA § 40-6-10." In ruling on the defendant's motion for a directed verdict as to this count, in which she contended that the State failed to prove mens rea, the trial court said, "[R]egardless of what the statute says, . . . when the state alleges [knowing] in the accusation, they take on that burden of proof." The court went on to hold that a jury question existed on whether the defendant's knowledge could be inferred from her failure to produce proof of insurance when asked.

While the State's Request to Charge No. 19 omitted the word "knowingly," the defendant objected to the omission during the charge conference, and the trial court added the word so that the jury charge mirrored the accusation. But then the trial court specifically instructed the jury that its charge on intent — that criminal intent was "simply the intent to do the act which results in the violation of the law, and not necessarily the intent to commit the crime itself" — applied only to the first three counts and not to the count charging no proof of insurance. With respect to that charge, the trial court instructed the jury that intent may be inferred from the circum-

stances, by acts and conduct, or "when it is the natural and necessary consequence of the act."

> The general rule that the allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

(Citation and punctuation omitted.) *Davis v. State*, 139 Ga. App. 105, 106 (2) (227 SE2d 900) (1976). The version of OCGA § 40-6-10 under which the defendant was convicted provided that "[t]he owner or operator of a motor vehicle for which minimum motor vehicle liability insurance coverage is required under Chapter 34 of Title 33 shall keep proof or evidence of required minimum insurance coverage in the vehicle at all times during the operation of the vehicle."[1] "Knowing" is not an element of driving without proof of insurance. *Thompson v. State*, 243 Ga. App. 878, 879, n. 3 (534 SE2d 151) (2000). While the accusation included that element, its inclusion was mere surplusage, and

> can be entirely omitted without affecting the charge and without detriment to the accusation. Mere surplusage will not vitiate an indictment, and need not be established in proof. The material facts which constitute the offense charged must be stated and they must be proved in evidence. But allegations not essential to such purpose, which might be entirely omitted without affecting the charge and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence.

(Footnotes omitted.) *Roseberry v. State*, 251 Ga. App. 856, 858 (3) (554 SE2d 816) (2001). In this case, the word "knowing" was not essential to proving the crime of driving with no proof of insurance. The accusation was sufficient to inform the defendant of the charge against her, and to protect her from another prosecution for the same offense. *Eidson v. State*, 262 Ga. App. 664, 665 (1) (586 SE2d 362) (2003). The arresting officer confirmed several times that the defendant could not find her proof of insurance, which was sufficient evi-

---

[1] The current version of OCGA § 40-6-10 provides that, until December 31, 2003, the owner or operator of a vehicle must have proof of insurance in the vehicle at all times. Beginning January 1, 2004, that requirement does not apply if the Department of Motor Vehicles database shows that the vehicle is insured.

dence to sustain the conviction. We therefore affirm the defendant's conviction for driving with no proof of insurance.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 18, 2004.

*Homer Robinson*, for appellant.

*Gwendolyn R. Keyes, Solicitor-General, Sabrina Nizamuddin, Assistant Solicitor-General*, for appellee.