## A00A1489. HIMMEL v. THE STATE.
### (542 SE2d 557)

PHIPPS, Judge.

A jury found Edmund J. Himmel guilty of vehicular homicide, serious injury by vehicle, and reckless driving. The court sentenced him separately for each offense. On appeal, Himmel claims that (1) the trial court erred by admitting evidence of three prior automobile accidents without conducting the hearing required by Uniform Superior Court Rule (USCR) 31.3, (2) he was denied effective assistance of counsel, and (3) the trial court erred by sentencing him on reckless driving. Because we cannot say that failing to conduct the USCR 31.3 hearing was harmless error, we remand the case to the trial court for the required hearing. We find that Himmel was not denied effective assistance of counsel. We find that the trial court erred by sentencing Himmel on the lesser included offense of reckless driving and vacate the conviction and sentence on that charge.

On October 8, 1996, Andrea Johnson and two friends were driving north on Interstate 95 in Camden County, Georgia. Johnson noticed a red sports car, which she later determined was being driven by Himmel, going south on I-95 at a very high rate of speed. She continued to observe the car in her rearview mirror and saw it slow down, make a u-turn, and begin traveling the wrong way in the middle of the interstate. Johnson put on her signal and began to slow down so that she could pull over. By the time she reached the emergency lane, she saw that the red car had started "clipping" cars traveling the other way. Johnson saw several cars swerve to avoid the red car before it hit a station wagon and then hit a gray car head on, causing it to veer off the side of the road. She then saw the red car hit a green car, causing it to spin around and land in the median. When it hit the green car, the red car caught fire and Himmel was thrown through the windshield.

Georgia State Patrol Officer Michael Young investigated the accident and determined that Himmel had been driving north in the southbound lane of the interstate. He first hit a gray Buick occupied by William and Dorothy Wilson almost directly head on. The impact caused the Wilsons' car to veer off to the right and pushed Himmel's car backward. A Toyota Celica sideswiped Himmel's vehicle and veered off to the right. Finally, a Honda Accord driven by William Wilkinson struck Himmel's car and landed in the median, severely damaged.

Johnson, a nurse's aide, attempted to administer first aid to the occupants of the Honda (William and Kimberly Wilkinson) while they waited for emergency personnel to arrive. William Wilkinson was knocked unconscious by the impact, and Johnson pulled him from the car. Kimberly Wilkinson was trapped in the car, and John-

son and Kimberly's husband, William, who had regained consciousness, were unable to get her out.

When emergency personnel arrived, they had to pull back the roof on the Honda to free Kimberly Wilkinson. She was severely injured and was flown to a hospital in Jacksonville, Florida, where she died several days later. The parties stipulated into evidence a medical report stating that her death was caused by multiple injuries sustained in the collision. Dorothy Wilson also was injured critically and was taken to the hospital. William Wilkinson suffered several fractured bones in his arm, leg, and foot and was taken to the hospital. Himmel also was injured and was flown to a hospital in Florida.

Dr. Nic Dalesandro, the coordinator of forensic services at Georgia Regional Hospital, examined Himmel pursuant to a court order that he be examined to assess his competency to stand trial and his responsibility for his actions at the time of the accident. Both Himmel and the State wanted the examination to be performed. Before questioning Himmel, Dr. Dalesandro advised him that he did not have to talk to him and that any information he disclosed could be made available to the court. After an initial interview, Dr. Dalesandro sent Himmel to Central State Hospital for a full neurological evaluation. The neurological assessments were largely within normal limits, although they indicated that Himmel has epilepsy. After a follow-up interview, Dr. Dalesandro determined that Himmel was competent to stand trial and that he was not suffering from any psychiatric or psychological disorder that would have affected his behavior. Dr. Dalesandro testified that Himmel told him that he had been involved in three prior automobile accidents caused by epileptic seizures. He testified that he did not know if Himmel's epilepsy affected his behavior on the day of the accident.

Himmel testified that he had a valid Massachusetts driver's license at the time of the accident. He described his earlier automobile accidents caused by his seizures, one of which involved injuries to a woman, her nine-month-old child, and Himmel. He said he did not tell the police investigating the prior accidents about his seizures because he did not want to lose his license.

The day before the accident at issue, Himmel left Massachusetts and drove for fifteen hours before stopping to get about four or five hours of sleep in his car and then continuing on to Georgia. Himmel testified that he remembered having the aura that usually precedes an epileptic seizure, pulling into the emergency lane, and trying to put his car into park. He claimed that he did not remember anything else until he woke up in the hospital in Jacksonville, Florida.

1. In his opening statement, the prosecutor told the jury that

what we found out in our investigation, after we found out

that he had a history of seizures, was that this isn't the first time that he has had a wreck and claimed that he had a seizure. In fact, specifically there were three prior instances, one only a few months prior to this crash in which he was involved in a wreck and claimed that he had a seizure that caused the wreck.

He explained that this information resulted in the addition of alternative counts in the indictment. One count was that Himmel drove in conscious disregard for the safety of other people by driving while knowing he was subject to having seizures that could cause unconsciousness and loss of voluntary control over his bodily movements.

Although he did not object to the prosecutor's opening statement or to Dr. Dalesandro's testimony about the prior accidents, Himmel claims on appeal that the State had an obligation to notify him before trial of its intent to use similar transaction evidence. We agree.

Before introducing evidence of similar transactions or occurrences, the State must provide written notice of its intent to use such evidence to defendant's counsel and file it with the court at least ten days before trial, unless the time period is altered by the judge.[1] The judge must then hold an evidentiary hearing to determine if the evidence should be admitted.[2] The State concedes that no notice was given and no hearing was conducted.

Himmel's failure to object to the lack of notice and the required hearing "does not constitute a waiver of the procedure dictated by Rule 31.3 (B) and does not preclude our consideration of the issue on appeal."[3] But neither the State's failure to give notice nor the trial court's failure to conduct the required hearing automatically entitles the defendant to a new trial. Instead, we evaluate the error to determine if it was harmless.[4]

We cannot say that the admission of evidence regarding Himmel's prior accidents without benefit of a USCR 31.3 (B) hearing was harmless under the circumstances. We therefore remand the case to the trial court to conduct a USCR 31.3 (B) hearing.[5] If the trial court determines that the State's evidence of similar transactions does not demonstrate substantial relevancy for a proper purpose under the standards of *Williams v. State*,[6] or if such relevancy is substantially outweighed by the danger of unfair prejudice, then Himmel is enti-

---

[1] USCR 31.1, 31.3.

[2] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); USCR 31.3 (B).

[3] *Riddle v. State*, 208 Ga. App. 8, 11 (1) (b) (430 SE2d 153) (1993).

[4] *White v. State*, 213 Ga. App. 429, 431 (1) (445 SE2d 309) (1994).

[5] Id.

[6] Supra.

tled to a new trial.[7] If the court determines that the evidence is admissible under USCR 31.3 (B) and *Williams*, a new trial is unnecessary,[8] and the judgment of the trial court shall be affirmed except as otherwise vacated in Division 3.

2. Himmel filed a motion for new trial asserting that his trial counsel was ineffective. After conducting a hearing on this claim, the trial court determined that his counsel was effective and that any deficiency alleged by Himmel would not have prejudiced his defense.

To establish ineffectiveness of trial counsel, Himmel must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[9] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[10] The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[11]

We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[12] Matters such as calling a particular witness, questioning on direct and cross-examination, making trial motions, and objecting to testimony are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client.[13]

(a) Initially, Himmel claims that Dr. Dalesandro could testify on behalf of the State only to respond to or rebut testimony of the defendant or the defendant's mental health expert[14] and that trial counsel therefore should have objected to the doctor testifying as part of the State's case. This aspect of Himmel's ineffective assistance claim was waived because it was not raised at the hearing on the motion for new trial.[15]

Any ineffective counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial court so that the challenge can be heard at the earliest practicable moment,

---

[7] *White*, supra.

[8] Id.

[9] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[10] Id. at 687-689.

[11] (Citations omitted.) *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).

[12] *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992).

[13] *Kinney v. State*, 234 Ga. App. 733, 738 (7) (c) (506 SE2d 441) (1998); *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995).

[14] *Nance v. State*, 272 Ga. 217, 220 (2) (526 SE2d 560) (2000).

[15] *Thompkins v. State*, 272 Ga. 835, 836 (2) (c) (536 SE2d 747) (2000); see also *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993).

i.e., during the hearing on the amended motion.[16]

(b) Himmel argues that his trial counsel should have investigated whether he was given a proper *Miranda* warning prior to his examination by Dr. Dalesandro and should have objected to the doctor's testimony if no warning was given. At the motion for new trial hearing, Himmel's trial counsel testified that Himmel received a *Miranda* warning when he arrived at the sheriff's department in Camden County, after he was released from the hospital in Florida. Himmel, however, testified that he was never given a *Miranda* warning.

Evidence was presented that Himmel was given a *Miranda* warning at the time of his arrest, that he sought a psychiatric evaluation, and that before the psychiatric evaluation, Dr. Dalesandro reminded him that he did not have to answer any of his questions and that anything he said might be provided to the court. After the doctor's warning, Himmel voluntarily participated in the evaluation. Because the trial court was authorized to find that Himmel's counsel reasonably believed that Himmel had received a proper *Miranda* warning, the court's determination that counsel did not render ineffective assistance on this issue was not clearly erroneous.

(c) Himmel asserts that his trial counsel was ineffective because he failed to object to Dr. Dalesandro's testimony about his prior accidents that were caused by seizures. Although Himmel's trial counsel did not object to the admission of the testimony, the failure to object under these circumstances does not constitute waiver,[17] as recognized in Division 1. Because any error regarding the admission of the similar transaction evidence will be corrected on remand, we need not consider the impact of counsel's failure to object to Dr. Dalesandro's testimony.

(d) The following exchange transpired during Himmel's cross-examination:

THE STATE: You didn't mean for anybody to get hurt, Mr. Himmel?
HIMMEL: No, I didn't, not at all.
THE STATE: Somebody did get hurt, didn't they?
HIMMEL: Yeah, that's what I heard, but I don't —.
THE STATE: Well, you were in the same hospital with them, were you not?
HIMMEL: Yes.
THE STATE: Okay. And you knew they were hurt; is that right?

---

[16] *Thompson v. State*, 257 Ga. 386, 388 (2) (359 SE2d 664) (1987).
[17] *Buice v. State*, 239 Ga. App. 52, 57 (3) (520 SE2d 258) (1999).

HIMMEL: Not until — not until I woke up and the doctors and nurses working on me in the emergency room told me — and then they — they told me about the accident. I didn't know how many people were hurt at the time.

THE STATE: Are you sorry that people got hurt?

HIMMEL: Yes.

THE STATE: Okay. Have you ever told anybody that?

HIMMEL: When I saw the list of the papers of all — list of all the charges of all the State's witnesses, including the victims, I was going to write to them or call them, but the lieutenant told me not to because otherwise they'd use that against me in court.

THE STATE: So you or your father or no one ever told the family of these people that you were sorry?

HIMMEL: No, not yet, but I do now.

Himmel contends that the prosecutor improperly commented on his right to remain silent.

We find that any deficiency in failing to object to the State's cross-examination of Himmel did not prejudice the defense because there is no reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.[18]

(e) Himmel argues that he did not want to testify and that he testified only because his trial counsel urged him to do so. At the motion for new trial hearing, Himmel's trial counsel testified that he had informed Himmel that he could choose whether to testify. He also testified that Himmel had always taken the position that he wanted to testify because this "horrible accident . . . was simply an accident and he wanted to explain his version of the facts to the jury."

The decision whether a defendant will testify in his own behalf at trial is a tactical one and as such will not be questioned by this court.[19] Although Himmel and his counsel gave conflicting testimony at the motion for new trial hearing concerning Himmel's desire to testify, "it was the function of the trial court hearing the evidence presented at the hearing on defendant's motion for new trial to determine witness credibility and resolve these conflicts."[20]

(f) Himmel claims his trial counsel was ineffective because he failed to introduce evidence of any prior medical treatment he received for epilepsy or seizures. But Himmel testified at the motion for new trial hearing that he had discussed this issue with his trial counsel and had told him that he did not want him to introduce evi-

---

[18] See *Watkins v. State*, 206 Ga. App. 575 (426 SE2d 26) (1992).

[19] *York v. State*, 207 Ga. App. 494, 497 (3) (428 SE2d 113) (1993).

[20] (Citation omitted.) Id. at 498.

dence from his prior treating physicians that he had been treated for epileptic seizures. Deciding what evidence to present is a matter of trial strategy and tactics, and tactical errors (assuming this was one) do not constitute ineffective assistance of counsel.[21]

(g) Finally, Himmel complains of his trial counsel's failure to file any requests to charge, and specifically, his failure to file a request to charge on the law of accident. At the motion for new trial hearing, Himmel's appellate counsel asked his trial counsel if he had filed any requests to charge, and his trial counsel said that he had not. The failure to file a request to charge on accident was not argued or otherwise presented to the trial court; therefore, nothing is presented for review.[22]

3. Himmel argues that the trial court erred in sentencing him on the lesser included offense of reckless driving because he also was sentenced on the greater offenses of homicide by vehicle in the first degree and serious injury by vehicle. The State concedes that Himmel should not have been sentenced on the reckless driving charge.

The traffic violations underlying the offense of vehicular homicide, including reckless driving, constitute lesser included offenses of vehicular homicide, and conviction of both offenses is proscribed under OCGA § 16-1-7.[23] The offense of reckless driving therefore merged into the crime of first degree vehicular homicide.[24] The trial court thus erred by sentencing Himmel on the lesser included offense of reckless driving.[25] Accordingly, we vacate the conviction and sentence for reckless driving.[26]

*Judgment affirmed in part on condition, vacated in part and case remanded. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 20, 2000.

*Lane & Crowe, Robert L. Crowe*, for appellant.
*Stephen D. Kelley, District Attorney, George C. Turner, Jr., Assistant District Attorney*, for appellee.

---

[21] *Sewell v. State*, 229 Ga. App. 685, 688 (1) (c) (494 SE2d 512) (1997).
[22] *Smith v. State*, 237 Ga. App. 852, 854 (4) (521 SE2d 7) (1999).
[23] *Gilpatrick v. State*, 226 Ga. App. 692, 695 (487 SE2d 461) (1997).
[24] Id.
[25] *McNabb v. State*, 180 Ga. App. 723, 725 (5) (350 SE2d 314) (1986).
[26] See *Smith v. State*, 272 Ga. 874, 881 (6) (c) (536 SE2d 514) (2000).