A02A1602. BENTON v. THE STATE.
(568 SE2d 770)

ELDRIDGE, Judge.

A Clarke County jury found Leo Benton guilty of stalking his daughter. He appeals, claiming that the evidence was insufficient to support the verdict; that the trial court failed to limit the jury's consideration of evidence of prior difficulties between the parties; and that the trial court erred by including as a condition of his probation that he have no contact with his granddaughter, the victim's daughter. Finding no merit to these claims of error, we affirm.

1. Benton first challenges the sufficiency of the evidence introduced against him.

> As an appellate court, we do not weigh the evidence, judge the credibility of witnesses or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld.[1]

The relevant elements of stalking are: following, placing under surveillance, or contacting another person without the consent of the other person for the purpose of harassing and intimidating him or her.[2] The term "harassing and intimidating" means "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear [of death or bodily harm]" to herself or an immediate family member and serves no legitimate purpose.[3] Overt threats of bodily harm are not required.[4]

In that regard, the victim testified at trial that on April 16, 2001, Benton was waiting in his vehicle outside the victim's place of employment, the First American Bank in Watkinsville. When she left the bank, she got into her vehicle and drove to a local shop; Benton followed her. From there, she drove across town to a bridal shower at the residence of her sister; Benton followed her. When the victim went inside the residence, Benton proceeded to drive up and down the road in front of the residence. The police were called, and Benton was detained for investigation. Benton admitted that he had been following the victim and claimed it was the only method by which he could locate his granddaughter, the victim's daughter. The police interviewed the victim, which resulted in Benton's arrest for misdemeanor stalking.

The victim then testified about a series of incidents involving Benton and herself beginning in 1997, wherein Benton repeatedly followed her, appeared at her home, and telephoned her at home and at work. During these incidents, Benton verbally abused the victim and threatened her; he asserted an absolute right to see the victim's daughter, his granddaughter. The victim testified that she felt

---

[1] *Maxwell v. State*, 250 Ga. App. 628-629 (1) (552 SE2d 870) (2001).

[2] OCGA § 16-5-90 (a).

[3] Id.

[4] *Fly v. State*, 229 Ga. App. 374, 376 (1) (494 SE2d 95) (1997).

threatened by Benton's conduct and was afraid for her daughter and for herself. She further testified that she repeatedly asked Benton to leave her alone.

Thereafter, the State called several witnesses to corroborate these harassing incidents. Taking the stand was a police officer who was called to the victim's home in 1998; he testified that Benton was outside the home, "agitated" and "mad at his daughter." He called the victim "a slut and a whore." The victim was "upset; she was crying," and she asked the officer to issue a "no trespass" warning to Benton. Three co-workers were called to the stand and testified as to Benton's various harassments of the victim at work and how such conduct caused the victim to be afraid for the safety of her daughter and herself. In addition, the State introduced a letter Benton wrote to his daughter in 1999 which threatened, "You can expect me to appear outside of your door in the next few days to see [the victim's daughter]." The letter informed the victim that "we'll just have to do this redneck style." The victim's sister was also called and testified that, on the incident date, Benton drove in front of the bridal shower residence eight or nine times.

Viewed in a light most favorable to the verdict, we find this evidence sufficient for a rational trier of fact to have found Benton guilty of misdemeanor stalking beyond a reasonable doubt.[5] While Benton claims the evidence shows that the purpose of his surveillance was to locate his granddaughter and not to harass and intimidate the victim as required by the stalking statute, the intention with which an act is done is peculiarly for the jury.[6] Given that Benton engaged for several years in a consistent pattern of abuse and harassment against his daughter, a rational trier of fact could find that his surveillance of her on the incident date evidenced yet another abusive, harassing act.

2. Next, in two enumerations, Benton claims error in the trial court's failure to limit evidence of prior difficulties between the parties.

(a) Benton takes issue with the introduction of 1997 and 1998 prior difficulties introduced to establish an abusive course of conduct which, in turn, demonstrated that the 2001 indicted act was committed for "the purpose of harassment and intimidation," an essential element of stalking. Benton claims the trial court should have instructed the jury that "all of the acts of the defendant which are found by them to constitute the elements of the offense of stalking must be shown by the evidence to have been committed by him

---

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[6] *Haney v. State*, 234 Ga. App. 214, 216 (1) (507 SE2d 18) (1998).

within two years prior to the prosecution of the defendant for this offense." This contention is meritless.

Benton is apparently confused between the requisite intent which must exist at the time of an indicted act and the broad spectrum of evidence which may be introduced to prove that the indicted act was committed with such requisite intent. Evidence of prior difficulties is always admissible to show bent of mind, intent, and course of conduct between the accused and the victim.[7] The statute of limitation as to an indicted offense certainly places no time restrictions on the introduction of prior difficulties when such evidence goes to show the intent with which the indicted act was committed.

(b) Benton also contends the trial court erred by not instructing the jury on the purpose for prior difficulties evidence. However, the only objection to this evidence was a relevancy objection, and in response thereto, the trial court held it relevant for whatever weight and credit the jury wished to give it. There was no request for a limiting instruction as to the purpose of such evidence. "Because [Benton] did not request a limiting instruction on the prior difficulties evidence, we will not reverse the trial court for failing to give one sua sponte."[8] Moreover, the trial court twice, sua sponte, instructed the jury that Benton was on trial only for stalking; "for that offense only"; "and that's the only issue you have been impaneled to decide." Under such circumstances, and in the absence of any request for a limiting instruction, we find no error.

3. Finally, Benton contends the trial court erred by including as a condition of probation that he have no contact with the victim's daughter during the probationary period; he claims that such condition was an abuse of the trial court's discretion because "the evidence failed to show any basis whatsoever for the victim to have any concern for the safety of her daughter[ ] other than the victim's 'fear of the unknown' which was based on her creative imagination rather than fact." We have reviewed the evidence of record as outlined in Division 1, supra. We find ample basis for the victim's concern and the jury's verdict. Accordingly, we find no abuse of the trial court's discretion in restraining Benton from contacting the victim and her family, including her daughter, during the probationary period as authorized by OCGA § 16-5-90 (d).[9]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

---

[7] *Vasser v. State*, 273 Ga. 747, 750 (3) (d) (545 SE2d 906) (2001).

[8] *Lee v. State*, 270 Ga. 626, 628 (4) (513 SE2d 225) (1999).

[9] We also find no abuse of the trial court's discretion in imposing family counseling as a condition of Benton's probation; the facts of this case clearly warrant it, and such treatment is authorized under OCGA § 16-5-90 (d). "A trial court certainly has broad discretion to determine the terms and conditions of probation. In the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or

DECIDED JULY 2, 2002 —
RECONSIDERATION DENIED JULY 19, 2002 ▮▮▮▮▮▮▮▮▮▮

*Leo E. Benton, Jr.*, pro se.
*Ralph W. Powell, Jr., Solicitor-General, Kevin D. Gonzalez, Assistant Solicitor-General*, for appellee.

---

suspension of a sentence by a trial court should not be approved. [Cits.]" (Punctuation and emphasis omitted.) *Pitts v. State*, 206 Ga. App. 635, 637 (3) (426 SE2d 257) (1992).