## A04A2124. HARRIS v. THE STATE.
### (612 SE2d 557)

PHIPPS, Judge.

After a jury trial, Jason Ian Harris was convicted and sentenced for driving under the influence of alcohol, reckless driving, vehicular homicide and five counts of serious injury by vehicle. On appeal, Harris claims that the trial court erred by (1) denying his motion to dismiss, (2) denying his general demurrer, (3) allowing the state to introduce evidence of his refusal to submit to chemical testing, (4) allowing the state to introduce similar transaction evidence of a prior DUI offense, (5) denying his motion to strike a prospective juror, (6) failing to merge the convictions for serious injury by vehicle and homicide by vehicle and (7) failing to grant a new trial based on newly discovered evidence. For reasons that follow, we affirm Harris's convictions and sentences for vehicular homicide and serious injury by vehicle and vacate his convictions and sentences for driving under the influence of alcohol and reckless driving.

The evidence showed that on January 19, 2003, Harris, his fiancée and his children moved from the Washington, D.C. area to a house in Marietta. After driving 600 miles, being awake for more than 30 hours and spending the day unloading moving trucks, Harris decided to pick up dinner for his family. Harris drove to the restaurant and drank a margarita while waiting for his food. On his way home, Harris got lost and decided to call his fiancée. He turned on the interior light in his truck and looked down at his cellular phone to try to find her number. While making the call, he drove straight through an intersection in a left-turn-only lane and struck two vans, killing a woman and injuring five children. An officer and a paramedic who came to the scene testified that Harris said that, prior to the collision, he had been at a bowling alley where he had been drinking. Another officer and a fireman at the scene smelled alcohol on Harris's breath. Three drivers who had observed Harris's driving shortly before the collision testified that he was swerving back and forth across the road and that he had narrowly missed two other cars.

After the collision, Harris was transported to North Fulton Regional Hospital, where he was advised of his implied consent rights. Harris refused to submit to a chemical test of his blood. A Cobb County magistrate issued a search warrant to obtain Harris's bodily

fluids for chemical testing. Two samples obtained pursuant to the warrant tested positive for methamphetamine and cocaine.

The state also obtained results of a medical test of Harris's blood plasma which revealed that his blood alcohol level one and one-half hours after the collision was 0.057 grams. An expert for the state opined that if Harris had an empty stomach, his blood alcohol level at the time of the collision could have been as high as 0.0795 grams.

Harris was indicted for driving under the influence of alcohol, cocaine and methamphetamine (Count 1), reckless driving (Count 2), vehicular homicide (Counts 3 and 4) and serious injury by vehicle (Counts 5 through 14). Counts 3 through 14 were alternative counts, predicated on the underlying offenses of driving under the influence of alcohol and drugs and reckless driving.

Harris filed a motion to suppress the results of any tests performed on the bodily fluids seized from him while in the hospital. The motion was granted because the warrant was signed by a Cobb County magistrate and was executed in Fulton County. After that motion was granted, Harris filed a motion to dismiss Counts 1, 3, 5, 7, 9, 11 and 13 of the indictment, which were all based on the offense of driving under the influence of alcohol and drugs. With the drugs now suppressed, Harris argued that he could not be convicted on those counts. The trial court denied the motion, but the trial proceeded with an amended indictment that excluded any mention of drugs.

Harris also filed a motion in limine to exclude evidence of his refusal to take a state-administered blood test. He argued that by disregarding his refusal and subjecting him to an involuntary test, the officer violated the implied consent law. The court denied Harris's motion.

1. Harris claims that the trial court erred by denying his motion to dismiss Counts 1, 3, 5, 7, 9, 11 and 13.

(a) Count 1 charged Harris with a violation of OCGA § 40-6-391 (a), which provides that

> A person shall not drive or be in actual physical control of any moving vehicle while: (1) Under the influence of alcohol to the extent that it is less safe for the person to drive; (2) Under the influence of any drug to the extent that it is less safe for the person to drive; (3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive; (4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection to the extent that it is less safe for the person to drive. . . .

Harris argues that the indictment, which charged him with driving under the influence of alcohol and drugs, charged a violation of OCGA § 40-6-391 (a) (4). With the suppression of the drug test results, the state was able to present evidence at trial only of a violation of subsection (a) (1). Harris claims that he was therefore entitled to have Counts 1, 3, 5, 7, 9, 11 and 13 of the indictment dismissed.

The trial court determined that Harris had been charged with violations of subsections (a) (1) and (a) (2), not (a) (4). As a result, the court denied Harris's motion.

OCGA § 40-6-391 (a) establishes a single crime of driving under the influence and subsections (a) (1) through (a) (4) merely define different methods of committing that one crime.[1] It is permissible to allege alternative methods of violating OCGA § 40-6-391 (a) in a single count.[2] And "[i]t is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form."[3]

Although the indictment could have been more artfully drafted, the trial court did not abuse its discretion by denying Harris's motion to dismiss based on its determination that he had been charged with driving under the influence of alcohol and driving under the influence of drugs, violations of OCGA § 40-6-391 (a) (1) and (a) (2).[4]

(b) Harris claims that the trial court erred by allowing the state to redact the indictment.

Prior to trial, Harris was given the option of proceeding with the original indictment which contained references to cocaine and methamphetamine or waiving his right to be reindicted and agreeing to an amended indictment that removed all references to those drugs. His counsel responded as follows:

> We do feel as if we are being put into an awkward position, a position where we are being forced to waive Mr. Harris' right to indictment. However, we feel as if — we object to being put in that position, but we feel as if we have no choice but to waive — to allow this redacted indictment to serve as the indictment in this case. So we will for purposes of the trial choose this indictment over the original indictment.

---

[1] *Morgan v. State*, 212 Ga. App. 394, 395 (1) (442 SE2d 257) (1994).

[2] Id.

[3] *Slinkard v. State*, 259 Ga. App. 755, 759-760 (2) (577 SE2d 825) (2003) (footnote omitted).

[4] See *State v. Mack*, 231 Ga. App. 499 (499 SE2d 355) (1998) (standard of review is abuse of discretion); see also *Lush v. State*, 168 Ga. App. 740, 742 (3) (310 SE2d 287) (1983) (language of an indictment interpreted liberally in favor of the state).

By allowing the case to proceed on the redacted indictment, Harris acquiesced in the court's ruling. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[5]

2. Harris claims that the trial court erred by denying his general demurrer to the charges of serious injury by vehicle included in Counts 5 through 14.

A general demurrer challenges the validity of the indictment.[6] An indictment is subject to a general demurrer only if the defendant can admit the charge as made and still be innocent.[7]

To be guilty of the offense of serious injury by vehicle, a person

shall cause bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 [reckless driving] or 40-6-391 [driving under the influence of alcohol, drugs or other intoxicating substances].[8]

Counts 5 through 14 charged Harris with causing bodily harm to five victims by seriously disfiguring their bodies through violations of OCGA § 40-6-390 or § 40-6-391. The injuries are described as fractured bones in the head, legs and/or arms of the victims.

Harris claims that he can admit those charges and still be innocent because fractured bones do not constitute serious disfigurement. We cannot agree. Whether fractured bones constitute serious disfigurement will depend on the specific facts of the case,[9] and the state is not required to allege all of those facts in the indictment.[10] Counts 5 through 14 all track the language of the statute and

---

[5] *Bixby v. State*, 254 Ga. App. 212-213 (1) (561 SE2d 870) (2002) (citation and punctuation omitted); see also *Marshall v. State*, 265 Ga. App. 556, 557-558 (3) (594 SE2d 661) (2004).

[6] *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977).

[7] Id.

[8] OCGA § 40-6-394.

[9] See, e.g., *Pollard v. State*, 230 Ga. App. 159, 160 (1) (495 SE2d 629) (1998) (jury could reasonably find fractured nose constituted serious disfigurement).

[10] See *Watson v. State*, 178 Ga. App. 778, 780 (1) (344 SE2d 667) (1986) (physical precedent) (state not required to summarize in indictment evidence it intended to adduce at trial); *Mell v. State*, 69 Ga. App. 302, 304 (1) (25 SE2d 142) (1943) (same); see also *Rollins v. State*, 154 Ga. App. 585, 586 (2) (269 SE2d 81) (1980) (indictment not fatally defective because it failed to allege in what manner the alleged victim was disfigured).

sufficiently contain and inform Harris of the elements of the offenses charged.[11] The trial court did not err in overruling Harris's general demurrer.

3. Harris claims that the trial court erred by allowing the state to introduce evidence of his refusal to submit to chemical testing.

(a) Harris first argues that the refusal was not admissible because the officers violated the Georgia implied consent law when they sought a search warrant to obtain his bodily fluids after he had refused to submit to chemical testing. Harris is correct that the officers did not have the right, after his refusal, to obtain a search warrant and forcibly conduct the tests.[12] But the remedy for the officers' misdeeds is the exclusion of the results of those tests,[13] and the results were in fact suppressed, albeit for a different reason. Harris does not argue that the officers violated the Georgia implied consent law *before* he refused to submit to chemical testing,[14] and thus offers no valid reason for not admitting the refusal.

(b) Harris next argues that the refusal was inadmissible because the state introduced evidence of his blood alcohol level from his medical records and cannot introduce both the test results and his refusal. We disagree.

Harris concedes that the results of a blood alcohol test requested by his hospital physician were admissible at trial.[15] Harris's refusal to submit to chemical testing was admissible under the Georgia implied consent law.[16] Thus, the test results and the refusal were admissible for different reasons and the admissibility of one does not preclude the admissibility of the other.

4. Harris claims that the trial court abused its discretion by admitting similar transaction evidence. Although Harris concedes that his prior DUI offense was admissible to show bent of mind and course of conduct, he argues that the court should not have allowed evidence that the prior offense also involved a collision with injuries because that evidence was overly prejudicial.

The prior offense occurred in April 2001 when Harris ended up on the wrong side of a six-lane road and collided with another car, injuring the driver.

After conducting the required hearing regarding the admissibility of the similar transaction evidence, the trial court ruled that the prior offense was sufficiently similar to the instant case to be relevant

---

[11] See *Rollins*, supra; OCGA § 17-7-54.

[12] See *Collier v. State*, 266 Ga. App. 762, 764 (598 SE2d 373) (2004).

[13] See id. at 764-765.

[14] Cf. *State v. Boger*, 253 Ga. App. 412, 413 (2) (559 SE2d 176) (2002).

[15] See *Dixon v. State*, 227 Ga. App. 533, 534 (2) (489 SE2d 532) (1997).

[16] OCGA § 40-5-67.1 (b).

and probative to show bent of mind and course of conduct. At trial, Harris again objected to the admission of evidence that the prior offense involved a collision with injuries, arguing that the prejudicial effect of the evidence outweighed its probative value. The trial court overruled the objection.

We reject Harris's claim that the prejudicial effect of the similar transaction evidence outweighed its probative value. The circumstances surrounding the prior and current DUI offenses, including the fact that they both involved collisions with injuries, are so similar that the prior crime clearly was admissible to show bent of mind and course of conduct.[17] Balancing the probative value of the evidence of the prior offense against its potentially prejudicial impact, we find no abuse of discretion by the trial court in admitting the similar transaction evidence.[18]

5. Harris claims that the trial court abused its discretion by refusing to grant his motion to strike a prospective juror for cause.

During sequestered, individual voir dire, Juror 14 said that, when he was a young child, his aunt was killed in an automobile accident involving alcohol. He also said that he had heard of two other similar incidents involving people that he did not know personally. Juror 14 stated that, based on his prior experiences, he was not sure that he could be a fair juror. He also stated that those prior experiences did not indicate to him that Harris was guilty. The only point of bias Juror 14 could identify was his impression upon seeing that Harris was represented by two attorneys that "if he is guilty . . . and he's got so much representation, . . . what is he trying to hide?" Juror 14 clarified that what he meant was that having two attorneys made it appear that Harris may be trying to avoid responsibility. On his own, Juror 14 stated that even that perceived bias did not go to the question of whether Harris was guilty; he would have to see the evidence to make that determination. He said that he did not have any opinions about Harris's guilt or innocence.

The decision whether to strike a juror for cause lies within the sound discretion of the trial court.[19] "Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the

---

[17] See *Carver v. State*, 248 Ga. App. 718, 719 (2) (548 SE2d 629) (2001); see also *Conner v. State*, 205 Ga. App. 564, 567 (4) (422 SE2d 872) (1992) (whether offenses both involved accident or near accident relevant to determine similarity of offenses).

[18] See id.; see also *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995) (trial court's finding that "other transactions" evidence is relevant necessarily constitutes implicit finding that probative value of that evidence outweighs its prejudicial impact).

[19] *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

court's charge upon the evidence."[20] A trial court is not required to strike for cause a juror who questions his or her own impartiality or expresses reservations about his or her ability to put aside personal experiences.[21]

Juror 14 revealed that his prior experiences might preclude him from being a fair juror and stated that he may have a bias based on the fact that Harris had two attorneys. But Juror 14 also stated that he would look to the evidence, not his prior experiences or his perceived bias, to determine whether Harris was guilty or innocent. The trial court did not abuse its discretion in refusing to strike Juror 14 for cause.[22]

Harris's claim that the court engaged in improper juror rehabilitation in violation of our holding in *Ivey v. State*[23] is without merit. In *Ivey*, we held that

> [w]here a prospective juror, who has been asked whether he or she can be fair and impartial in the case, answers under oath a plain, "No," and provides an explanation for the inability to be fair and impartial, the court should limit further questions to clarification of the answer. Neither the court nor the parties should incessantly interrogate the juror in a manner calculated only to elicit a response contrary to the one originally given. Interrogation for that purpose is nothing more than an effort to justify finding a biased juror qualified.[24]

This case is distinguishable from *Ivey*. Here, Juror 14 stated that he would base his decision as to Harris's guilt or innocence on the evidence presented at trial and not on his prior experiences or his perceived bias. And he made that statement before the court asked him any questions. When Juror 14 began equivocating about his impartiality (in response to questions from Harris's attorney), the court intervened and asked one question — "Can you listen to the evidence and decide the case based on what you hear from the witness stand?" Juror 14 responded, "I believe I can." The court did not interrogate Juror 14 and its one question merely confirmed that Juror 14's opinions and perceived bias were not so fixed as to warrant

---

[20] *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993) (citations omitted).

[21] See *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998); *Johnson*, supra; *Clark v. State*, 265 Ga. App. 112, 114-115 (593 SE2d 28) (2003).

[22] See *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999).

[23] 258 Ga. App. 587 (574 SE2d 663) (2002).

[24] Id. at 592 (2).

his disqualification for cause.[25]

6. Harris claims that the trial court should have merged his serious injury by vehicle convictions with his conviction for homicide by vehicle. He argues that the same facts were used to prove all of those offenses.

Under OCGA §§ 16-1-6 and 16-1-7, a defendant may be prosecuted for two crimes based on the same conduct, but he may not be convicted of more than one crime if one crime is included in the other. Here, Harris was sentenced on one count of vehicular homicide, based on causing the death of Lori Tracy by driving under the influence of alcohol. He was sentenced on five counts of serious injury by vehicle based on causing bodily harm to five different victims (none of whom was Lori Tracy) by seriously disfiguring their bodies while driving under the influence of alcohol. Although the convictions all stemmed from the same instance of driving under the influence of alcohol, they did not merge as a matter of fact or law.[26]

Harris argues that the holding in *Kirkland v. State*[27] requires that his convictions on Counts 5, 7, 9, 11 and 13 be vacated. In *Kirkland*, the appellant had been charged with two counts of causing serious injury by vehicle, one of which alleged that the appellant's act of driving under the influence of alcohol had rendered the victim's left foot useless. The other count alleged that the appellant's act of driving under the influence of alcohol had rendered the same victim's right foot useless. We held that the appellant could not be sentenced on both counts because his conduct in driving under the influence had been "used up" in proving one of the counts and could not be used as the predicate for a conviction and sentence on the other.

This case is distinguishable from *Kirkland*. Here, there were five victims injured and one victim killed by Harris's act of driving under the influence of alcohol. Because there were five separate victims in Counts 5, 7, 9, 11 and 13, the trial court did not err in treating the counts as separate offenses for sentencing.[28]

As the state candidly points out, the trial court did err by sentencing Harris on driving under the influence of alcohol (Count 1) and reckless driving (Count 2). Those traffic offenses constitute lesser included offenses of vehicular homicide and therefore merged into the crime of first degree vehicular homicide.[29] Accordingly, we vacate Harris's convictions and sentences for driving under the influence of

---

[25] See *Clark*, supra at 116.

[26] See *Hopkins v. State*, 255 Ga. App. 202, 207 (564 SE2d 805) (2002).

[27] 206 Ga. App. 27 (424 SE2d 638) (1992).

[28] See id.; see also *Cox v. State*, 243 Ga. App. 668 (533 SE2d 435) (2000).

[29] See *Himmel v. State*, 246 Ga. App. 845, 851 (3) (542 SE2d 557) (2000); *Duncan v. State*, 183 Ga. App. 368, 370 (5) (358 SE2d 910) (1987).

alcohol and reckless driving.[30]

7. Harris claims that he is entitled to a new trial based on newly discovered evidence that he suffered from pigmentary dispersion syndrome and nearsightedness at the time of the collision.

At the motion for new trial hearing, Harris presented the testimony of Dr. Joseph Citron, an ophthalmologist. Citron testified, based on his review of Harris's prison medical records, that Harris was nearsighted, had an astigmatism and suffered from pigmentary dispersion syndrome. According to Citron, pigmentary dispersion syndrome creates a slight blur to a person's vision and is not correctable with glasses or contact lenses. Harris's uncorrected vision is 20/40 in one eye and 20/60 in the other eye, which Citron testified was adequate to get a driver's license in Georgia without requiring corrective lenses. Citron testified that most people have slightly better vision during the day than at night. Citron concluded by opining that Harris's uncorrected nearsightedness, the nighttime situation and the pigmentary dispersion proximately caused the collision. On cross-examination, Citron acknowledged that pigmentary dispersion syndrome becomes worse over time, that the syndrome could become worse over a period of months and that he had no way of knowing whether the effects of the syndrome were significantly less in January 2003, when the collision occurred, than in August 2003, when Harris's eye examination was performed.

Harris testified at the motion for new trial hearing that although he knew his vision was blurred when he tried to view things far away, he assumed that this was normal. He testified that, prior to his eye examination, he did not believe he had problems with his eyesight.

The trial court denied Harris's motion for new trial on the basis of newly discovered evidence based at least in part on Citron's testimony that even with the impairments to Harris's vision, he qualified to obtain a Georgia driver's license without limitations. We will not reverse the denial of Harris's motion absent an abuse of discretion.[31]

The party seeking a new trial on the basis of newly discovered evidence must satisfy the court that: (1) the evidence has come to his or her attention since the trial; (2) it was not the result of a lack of due diligence that he or she did not acquire it sooner; (3) it is so material that it would probably produce a different verdict; (4) it is not cumulative only; (5) the affidavit of the witness should be procured or its absence accounted for; and (6) the effect of the evidence is not only

---

[30] See *Himmel*, supra.
[31] See *Benn v. State*, 244 Ga. App. 67, 70 (2) (535 SE2d 28) (2000).

to impeach the credit of a witness.[32] To secure a new trial, all six requirements must be met.[33]

Although the trial court did not go through the factors set forth in *Timberlake*, its conclusion seems to be based on a failure to satisfy requirement (3). "In determining whether any newly discovered evidence would probably produce a different verdict, a trial court should not consider new evidence in isolation. Rather, it should consider the strength and weaknesses of both the state's and the defendant's case and the nature and strength of a defendant's new evidence."[34]

Harris's testimony at trial was that he got lost on the way back from the restaurant and that while looking down at his cellular phone, he collided with the first van. Harris's counsel also repeatedly mentioned Harris's lack of sleep prior to the collision. If in fact Harris was not looking at the road or was too exhausted to pay attention when the collision occurred, his visual impairment would have made no difference. The state presented evidence that, prior to the collision, Harris had been drinking and that he had swerved back and forth across the road, narrowly missing two other cars. There was no evidence that Harris's errant driving prior to the collision had anything to do with Harris's vision problems. Based on the evidence as a whole, it seems unlikely that Citron's testimony would have produced a different verdict. The trial court did not abuse its discretion by denying Harris's motion.[35]

*Judgment affirmed in part and vacated in part. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 22, 2005 — 

*Bernard S. Brody*, for appellant.
*Patrick H. Head, District Attorney, Amy H. McChesney, Henry R. Thompson, Assistant District Attorneys*, for appellee.

---

[32] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).
[33] Id.
[34] *Carl v. State*, 234 Ga. App. 61, 62 (1) (506 SE2d 207) (1998) (citations omitted).
[35] See id.