A06A0759. HANNAH v. THE STATE.
(633 SE2d 800)

PHIPPS, Judge.

Following an automobile collision with Thelma Head, Willie Joe Hannah was convicted of serious injury by vehicle, driving under the influence (DUI) to the extent it was less safe for him to drive,[1] failure to maintain lane, marijuana possession, and defective equipment. On appeal, he contends that the trial court erred by denying his motion to suppress evidence of the results of a chemical test showing the level of alcohol in his blood and by failing to merge the DUI count with the serious injury by vehicle count for purposes of sentencing. Although evidence of the test results was admissible, the DUI count should have been merged with the serious injury by vehicle count. Thus, we vacate Hannah's DUI conviction and sentence. For reasons that

---

[1] Hannah was also found guilty of DUI per se, which count was merged into the DUI less safe count.

follow, we also vacate Hannah's sentence for serious injury by vehicle and remand the case for resentencing on this count. We affirm the remaining convictions.

Head testified that on January 18, 2003, a vehicle crashed into her car head-on. She was taken to a nearby hospital. Her injuries included a broken femur; and she required surgery, hospitalization for a week, and rehabilitation for two months. For approximately ten weeks, Head could not place any weight on her damaged leg, and she needed a wheelchair, then a walker, and later a cane.

Georgia State Trooper Brian Cuendet arrived at the scene in response to a "serious injury accident" dispatch. There, he found a wrecked car and van, the latter of which was on its side and missing its front windshield. Cuendet learned that the only occupants of the vehicles had been the drivers, both of whom had already been taken to nearby hospitals. Based on his investigation of the scene, Cuendet determined that the van had left its lane of travel, crashed head-on into the car, knocked the car down an embankment, and then overturned. His further investigation led him to suspect that the operator of the van had been driving under the influence of alcohol. Inside the van, Cuendet noticed a strong odor of alcohol and found empty beer cans and an unopened, cool beer can. Just outside the van, he found more empty beer cans and a plastic bag of marijuana. Concluding, based upon the registration of the van and personal belongings therein, that the driver of the van was Hannah, Cuendet radioed State Trooper John Cronin to go to the hospital and obtain a sample of Hannah's blood. Cuendet informed Cronin that Hannah had been one of the drivers.

Cronin had heard the "serious injury accident" dispatch and was en route to the scene to assist Cuendet when he received Cuendet's call. Cronin went instead to the hospital and located Hannah in a treatment room, where Hannah was the only patient. The odor of alcohol in the room was "overwhelming." Cronin identified the odor as that which is emitted from a person who had consumed alcohol, as opposed to that of spilled alcohol. He described, "[T]he odor was more of a metabolized alcoholic beverage . . . more of a putrid smell than just the odor of beer and some alcoholic beverage." Cronin formed the opinion that Hannah was under the influence of alcohol. He did not place Hannah under formal arrest because Hannah was receiving medical treatment. He read Hannah, who was alert, the implied consent rights. Hannah consented to a blood test, the results of which revealed a blood alcohol level of 0.265. About two months after the accident, Cuendet served Hannah with an arrest warrant in connection with the accident.

1. Hannah contends that the trial court erred in denying his motion to suppress the blood test results, arguing that his consent

failed to accord with the implied consent statute, OCGA § 40-5-55. Hannah points out that, when Cronin read him the implied consent rights, Cronin had not placed him under arrest. In addition, Hannah asserts that Cronin did not have probable cause to believe he was DUI of alcohol.

In *Hough v. State*,[2] the Supreme Court of Georgia considered whether the state may constitutionally and in accordance with the doctrine of implied consent

> require a suspect who has not yet been arrested to submit to a chemical test of his blood, breath, urine, or other bodily substances where the suspect has been involved in a traffic accident resulting in serious injuries or fatalities and the investigating law enforcement officer has probable cause to believe that the suspect was [DUI] of alcohol or other drugs.[3]

The Court answered this question in the affirmative.[4] In so doing, the Court reiterated its holding in *Cooper v. State*,[5] that "[t]o the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless of any determination of probable cause*, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions."[6] But in *Hough*, the Court explained,

> where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing search is both warranted and constitutional.[7]

The Court further concluded in *Hough* that nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested to trigger his implied consent to testing following a traffic accident resulting in serious injuries or fatalities.[8] In so concluding, the Court reasoned that (a) a

---

[2] 279 Ga. 711 (620 SE2d 380) (2005).

[3] Id. at 712.

[4] Id.

[5] 277 Ga. 282 (587 SE2d 605) (2003).

[6] *Hough*, supra at 713 (1) (a), quoting *Cooper*, supra at 291 (V) (punctuation omitted).

[7] *Hough*, supra.

[8] Id. at 714.

DUI suspect may be so incapacitated that a formal arrest would be unwarranted under the circumstances; and (b) an individual involved in such an accident, as opposed to someone who is merely stopped while driving, is on notice that some inquiry will be made regarding the cause of and responsibility for the accident, and this knowledge would give context to the subsequent reading of implied consent rights.[9]

The motor vehicle accident in this case constituted a "traffic accident resulting in serious injur[y]" as contemplated by the implied consent statute.[10] Furthermore, the ensuing search was supported by probable cause. In arguing the contrary, Hannah focuses on what Cronin personally observed at the hospital, pointing out that there is no evidence that Cuendet informed Cronin of his findings that led him to suspect that the driver of the van had been DUI. But Hannah's focus is too narrow. "Probable cause may rest upon the collective knowledge of the police when there is some degree of communication between them, rather than solely on the information possessed by the officer who actually [conducts the search]."[11]

Here, Cuendet's investigation of the scene led him to believe that the operator of the van had been driving under the influence of alcohol and that the operator of the van was Hannah. He thus radioed Cronin, who knew that Cuendet was investigating a motor vehicle collision, to obtain a blood sample from one of the drivers, named Hannah. Cronin found Hannah in a treatment room with an overwhelming odor of ingested alcohol, which Cronin deduced Hannah was emitting. Under these circumstances, the collective knowledge of the state troopers supported a finding of probable cause that Hannah had been DUI of alcohol.[12] Furthermore, a formal arrest of Hannah prior to reading the implied consent rights was not warranted

---

[9] Id.

[10] OCGA § 40-5-55 (c), which provides, "As used in this Code section, the term 'traffic accident resulting in serious injuries or fatalities' means any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone. . . ."

[11] Goodman v. State, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985) (citation omitted); see Burgeson v. State, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996).

[12] See Hough, supra at 717 (2) (b) (investigating officer had probable cause that suspect had been DUI, where officer saw flipped-over vehicle down a steep embankment; smelled an alcoholic beverage inside the cab; discovered inside the vehicle a half-empty gallon-bottle of Crown Royal and several unopened cans of beer; and, at the hospital, observed suspect's glassy eyes, slurred speech, and alcoholic odor of breath); see also Pecina v. State, 274 Ga. 416, 418 (2) (554 SE2d 167) (2001) (DUI may be shown by circumstantial evidence only, and when there is evidence that the suspect has been drinking, the manner of his driving may be considered in answering the question of whether he had been affected by alcohol to the extent that he was less safe to drive).

because Hannah was being administered medical care.[13] Under these circumstances, Hannah's consent to the blood test was valid.[14]

Where, as here, the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[15] Applying this standard, we find that the trial court properly denied Hannah's motion to suppress.[16]

2. Hannah contends, and the state agrees, that the trial court erred by not merging the DUI count into the serious injury by vehicle count for purposes of sentencing. He points out that, with respect to the serious injury by vehicle charge, the indictment alleged that he had "cause[d] bodily harm to Thelma Head, a human being, by rendering a member of her body useless through a violation of O.C.G.A. Section 40-6-391, Driving Under the Influence of alcohol and a drug, to wit: Marijuana." Hannah posits that the evidence of DUI was thus "used up" in establishing the serious injury charge, leaving no evidence to prove a separate DUI charge.

> OCGA § 16-1-7 (a) sets forth the substantive bar of double jeopardy by providing that an accused may be prosecuted for each crime that arises from the accused's conduct, but an accused may not be convicted of more than one crime, if one crime is included in the other. Thus, Georgia law bars conviction and punishment of all crimes which arise from the same criminal conduct and are as a matter of law or a matter of fact included in the major crime for which the defendant has been convicted. The judgment of conviction and the sentence imposed for offenses included as a matter of fact or law in another offense arising out of the same facts for which the defendant has been found guilty and been sentenced are vacated by operation of law.[17]

The offense of serious injury by vehicle is committed when a person, without malice, "cause[s] bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof . . .

---

[13] See *Hough*, supra at 714 (1) (b).

[14] See id. at 714-715 (1) (a), (b).

[15] *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994).

[16] See *Hough*, supra at 711-715 (1); *Cunningham v. State*, 231 Ga. App. 420, 421 (498 SE2d 590) (1998) (appellate court's responsibility on review of a trial court's decision regarding a motion to suppress is to ensure that there was a substantial basis for the decision).

[17] *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002) (citations and emphasis omitted).

through the violation of Code Section 40-6-390 or 40-6-391,"[18] the latter of which proscribes DUI. Here, the single instance of Hannah's driving under the influence was "used up" in proving that he had caused a serious injury by vehicle. Thus, that instance could not be used again for a separate DUI conviction.[19] Because the DUI, the predicate act underlying the serious injury by vehicle, constituted a lesser included crime of the serious injury by vehicle, OCGA § 16-1-7 (a) bars conviction of and punishment for both offenses.[20]

Contrary to Hannah's claim, however, the court's failure to merge the two counts does not entitle him to a new trial. Instead, we vacate his DUI conviction and sentence.[21]

3. Finally, Hannah contends that "[t]he trial court erred in imposing upon [him] statutory fees and conditions of a DUI sentence, in addition to a sentence of 12 months confinement, as conditions of the serious injury by vehicle sentence." Specifically, he cites the probation conditions requiring that he pay a $25 photograph fee,[22] a $25 DUI fee,[23] a $25 crime lab fee, and a $100 brain/spinal cord fee,[24] and that he install an ignition interlock device.[25]

(a) Hannah contends that his punishment for DUI was illegal. He claims:

> The trial court, which sentenced [him] to 12 months confinement for DUI — the maximum allowable . . . nonetheless imposed as conditions of the felony sentence for Serious Injury by Vehicle certain statutory charges and conditions

---

[18] OCGA § 40-6-394.

[19] See *Harris v. State*, 272 Ga. App. 366, 373 (6) (612 SE2d 557) (2005) (where DUI constituted a lesser included offense of vehicular homicide, the former merged with the latter); *Himmel v. State*, 246 Ga. App. 845, 851 (3) (542 SE2d 557) (2000); *Cox v. State*, 243 Ga. App. 668-669 (533 SE2d 435) (2000) (DUI conviction merged with vehicular homicide while driving under the influence because all of the elements of DUI had to be proved in order to convict defendant of vehicular homicide while DUI); accord *Williams v. State*, 262 Ga. 677, 678 (3) (424 SE2d 624) (1993) (a defendant may not be convicted of both felony murder and the underlying felony alleged by the indictment to support the conviction of felony murder).

[20] See *Williams*, supra; *Harris*, supra; *Himmel*, supra.

[21] See *Williams*, supra; *Harris*, supra at 373-374; *Himmel*, supra.

[22] See OCGA § 40-6-391 (j) (1), (2) (regarding publication of notice and photograph of person convicted a second time within five years of DUI and requiring that such person be assessed $25 for cost of publication).

[23] See OCGA §§ 15-21-110; 15-21-112 (a) (regarding imposition of fine upon DUI violator and providing that proceeds may be used to compensate innocent victims of crime).

[24] See OCGA §§ 15-21-149; 15-21-150 (regarding imposition of a fine upon DUI violator and providing that proceeds shall be remitted to the Brain and Spinal Injury Trust Fund Commission).

[25] See OCGA §§ 42-8-111; 42-8-112 (regarding imposition of requirement that certain DUI violators install ignition interlock devices).

peculiar to a DUI sentence, and which could not be imposed as part of [the DUI] sentence because none of the sentence was probated.

Hannah's contention that his sentence for the DUI charge was not authorized by law is moot in light of our vacating that conviction and sentence.[26]

(b) Challenging further the cited probation conditions, Hannah asserts that, because the DUI less safe count should have merged into the serious injury by vehicle count, imposition of conditions peculiar to a DUI sentence is unlawful.

As Hannah acknowledges, the cited conditions were imposed upon the probated sentence for the serious injury by vehicle count. "A trial court certainly has broad discretion to determine the terms and conditions of probation. In the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved."[27]

OCGA § 42-8-35 enumerates 12 different conditions of probation which generally may be imposed on probationers in every case. By enumerating these conditions, the legislature has provided the courts with probation conditions which bear a reasonable relation to any crime and further serve to promote the rehabilitation of prisoners and the protection of society, the two main goals of probation.[28]

The list provided in OCGA § 42-8-35, however, is not exclusive.[29]

While we agree with Hannah that the cited conditions are peculiar to a DUI conviction,[30] Hannah has failed to cite any authority showing that a court abuses its discretion in imposing them upon a probated sentence for serious injury by vehicle, where DUI was the predicate offense. Hannah also has failed to show that any such condition is unreasonable or fails to serve the main goals of probation.

---

[26] See Division 2, supra.

[27] *Benton v. State*, 256 Ga. App. 620, 623-624 (3), n. 9 (568 SE2d 770) (2002) (citation and punctuation omitted); see also *Hill v. State*, 270 Ga. App. 114, 115 (605 SE2d 831) (2004); OCGA § 42-8-35 (the court shall determine the terms and conditions of probation).

[28] *Darby v. State*, 230 Ga. App. 32 (1) (495 SE2d 146) (1997) (citation omitted).

[29] *Ballenger v. State*, 210 Ga. App. 627, 628 (1) (436 SE2d 793) (1993); see also *Mangiapane v. State*, 178 Ga. App. 836 (344 SE2d 756) (1986).

[30] See footnotes 22-25, supra.

Therefore, we see no reason why the cited conditions may not be imposed upon a probated sentence for serious injury by vehicle.[31]

Nevertheless, we conclude that the sentence must be vacated. Therein, the court ordered, "As a condition of [the probated serious injury by vehicle sentence], the defendant shall pay fines, fees and surcharges as ordered in [the DUI less safe sentence] as follows: a $25.00 photo fee; a $25 DUI fee, a $25 Crime Lab fee and a $100 Brain/Spinal Cord fee." However, the written judgment of conviction and sentence for the DUI less safe count did not impose any fines, fees, or surcharges. And even if it had, the DUI sentence is now vacated. In light of this incongruence, Hannah's sentence for serious injury by vehicle is vacated. This case is remanded for resentencing on that count not inconsistent with this opinion.

*Judgment affirmed in part and vacated in part and case remanded. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 30, 2006.

*John T. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Amanda R. Batchelor, Assistant District Attorney*, for appellee.

[31] See generally *Benton*, supra; *Ballenger*, supra; *Mangiapane*, supra.